IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE**,** <br><br> Plaintiff, <br><br> v. <br><br> STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, <br><br> Defendants. | **Case Number**:  3:24-cv-50504 <br><br> **Judge**:  Hon. Iain D. Johnston <br><br> **Magistrate Judge**:  Michael F. Iasparro |

**DEFENDANT STEVEN S. CLIFF'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1
ARGUMENT .........................................................................................................................1
    I.    The Court Lacks Personal Jurisdiction over Defendant Cliff .................................1
        A.    AmFree's Claim Arises from Commitments that Do Not Apply in Illinois .................................................................................................................1
        B.    Other Provisions Are Not Related to AmFree's Preemption Claim ............2
        C.    Other Parties' Illinois Residency Does Not Support Jurisdiction Over Defendant Cliff .................................................................................................4
        D.    Traditional Notions of Fair Play and Substantial Justice Favor Dismissal ..................................................................................................................8
    II.    Venue Is Improper in This District ........................................................................8
    III.    If Not Dismissed, the Case Should Be Transferred. ............................................11
CONCLUSION ....................................................................................................................13

## TABLE OF AUTHORITIES

Page

**CASES**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*
   751 F.3d 796 (7th Cir. 2014) ...............................................................................................3

*Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*
   80 F. Supp. 3d 870 (N.D. Ill. 2015) ..............................................................................9, 10, 11

*B.D. by & through Myer v. Samsung SDI Co.*
   91 F.4th 856 (7th Cir. 2024) ................................................................................................3

*Beveridge v. Mid-West Mgmt., Inc.*
   78 F. Supp. 2d 739 (N.D. Ill. 1999) ......................................................................................9

*Bolger v. Nautica Int'l, Inc.*
   861 N.E.2d 666 (Ill. App. Ct. 2007) ....................................................................................5

*Brook v.McCormley*
   873 F.3d 549 (7th Cir. 2017) ................................................................................................6

*Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occup. Safety & Health*
   *of the State of Calif.*
   1 F.4th 346 (5th Cir. 2021) ....................................................................................................2

*Burger King Corp. v. Rudzewicz*
   471 U.S. 462 (1985) ..............................................................................................................6

*Cal. Tow Truck Ass'n v. City & County of San Francisco*
   693 F.3d 847 (9th Cir. 2012) ................................................................................................4

*Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*
   536 F.3d 757 (7th Cir. 2008) ................................................................................................6

*Cleary v. Philip Morris, Inc.*
   726 N.E.2d 770 (Ill. App. Ct. 2000) ....................................................................................7

*Cont'l Ill. Nat'l Bank & Tr. Co. of Chicago v. Stanley*
   606 F. Supp. 558 (N.D. Ill. 1985) ......................................................................................13

*Fogelson v. Iatrides*
   2000 WL 631293 (N.D. Ill. May 12, 2000) ......................................................................11

# TABLE OF AUTHORITIES
## (continued)

Page

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*
  592 U.S. 351 (2021) .................................................................................................... 4, 6

*Fuld v. Palestine Liberation Org.*
  606 U.S. 1 (2025) ............................................................................................................ 8

*Green v. Advance Ross Elecs. Corp.*
  427 N.E.2d 1203 (Ill. 1981) ............................................................................................ 7

*Hyatt Int'l Corp. v. Coco*
  302 F.3d 707 (7th Cir. 2002) ..................................................................................... 6, 11

*Imperial Crane Services, Inc. v. Cloverdale Equipment Co.*
  2013 WL 5904527 (N.D. Ill. Nov. 4, 2013) ................................................................. 10

*Interlease Aviation Invs. II (Aloha) LLC v. Vanguard Airlines*
  262 F. Supp. 2d 898, 914 (N.D. Ill. 2003) .............................................................. 10, 11

*J.S.T. Corp. v. Foxconn Inter. Tech. Ltd.*,
  965 F.3d 571 (7th Cir. 2020) .......................................................................................... 3

*Jaramillo v. DineEquity, Inc.*
  664 F. Supp. 2d 908 (N.D. Ill. 2009) ............................................................................ 13

*Knaus v. Guidry*
  906 N.E.2d 644 (Ill. App. Ct. 2009) ............................................................................... 7

*Koos, Inc. v. Performance Indus.*
  747 F. Supp. 487 (N.D. Ill. 1990) ................................................................................. 13

*Logan Prods., Inc. v. Optibase, Inc.*
  103 F.3d 49 (7th Cir. 1996) ............................................................................................ 5

*Matlin v. Spin Master Corp.*
  921 F.3d 701 (7th Cir. 2019) .......................................................................................... 2

*MB Fin. Bank, N.A. v. Walker*
  741 F. Supp. 2d 912 (N.D. Ill. 2010) ...................................................................... 10, 11

*Moore v. AT&T Latin Am. Corp.*
  177 F. Supp. 2d 785, 789 (N.D. Ill. 2001) .................................................................... 10

# TABLE OF AUTHORITIES
(continued)

Page

*Moran Indus., Inc. v. Higdon*
    No. 07 C 6092, 2008 WL 4874114 (N.D. Ill. June 6, 2008) ...................................................9

*North Grain Mktg., LLC v. Greving*
    2014 743 F.3d 487 (7th Cir. 2014) ......................................................................................5, 6

*Pro. Towing & Recovery Operators v. Box*
    965 F. Supp. 2d 981 (N.D. Ill. 2013) ..................................................................................3, 4

*Rogers v. City of Hobart*
    996 F.3d 812 (7th Cir. 2021) ...................................................................................................2

*Schoeps v. Sompo Holdings, Inc.*
    736 F. Supp. 3d 582 (N.D. Ill. 2024) .......................................................................................8

*Tamburo v. Dworkin*
    601 F.3d 693 (7th Cir. 2010) ...................................................................................................8

*Textor v. Bd. of Regents of N. Ill. Univ.*
    711 F.2d 1387 (7th Cir. 1983) .................................................................................................7

*U.S.O. Corp. v. Mizuho Holding Co.*
    547 F.3d 749 (7th Cir. 2008) .................................................................................................12

*Vera Bradley Designs, Inc. v. Denny*
    No. 1:18-CV-70-TLS, 2018 WL 3633986 (N.D. Ind. July 30, 2018) .....................................8

*Viktron Ltd. P'ship v. Program Data Inc.*
    759 N.E.2d. 186 (Ill. App. Ct. 2001) ......................................................................................6

*Zelinski v. Columbia 300, Inc.*
    335 F.3d 633 (7th Cir. 2003) .................................................................................................11

**STATUTES**

28 U.S.C. § 1404(a) ..............................................................................................................11, 12

Clean Air Act Section, 209(a), 42 U.S.C. § 7543(a) ............................................................ *passim*

**OTHER AUTHORITIES**

15 Wright & Miller, Federal Practice and Procedure § 3848 (4th ed., updated May
    21, 2025) .........................................................................................................................11, 12

## INTRODUCTION

AmFree fails to meet its burden to show personal jurisdiction over Defendant Cliff or proper venue for its preemption claim against him. The central problem in both regards is that AmFree's claim is one of preemption, and the parts of the Clean Truck Partnership it claims are preempted do not apply in Illinois. AmFree argues that enforcement of those provisions might indirectly affect Illinois, that other provisions of the Partnership apply in Illinois, and that the Partnership was negotiated with and signed by Illinois entities. But none of that relates or gives rise to AmFree's claim, and cannot support either jurisdiction or venue.

In addition, exercising jurisdiction over Defendant Cliff in this case would be both manifestly unjust and wasteful, a problem highlighted by the fact that Defendant Cliff is now defending against a virtually identical preemption claim against the Partnership's sales commitments in the Eastern District of California. That district, and not this one, is a proper forum in which to resolve AmFree's preemption claim against the Partnership's sales commitments.

## ARGUMENT

### I. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT CLIFF

#### A. AmFree's Claim Arises from Commitments that Do Not Apply in Illinois

"The sole claim in this case" asserts Clean Air Act preemption. Resp. to Mot., ECF No. 138 ("Opp."); *see also* Third Am. Compl. ("TAC") ¶¶ 163–182. As articulated in the complaint, AmFree's claim is that the Partnership's sales commitments are a "promise of compliance" with emissions standards for which California lacks a waiver of preemption, and any enforcement of those commitments would thus be preempted by Section 209(a) of the Clean Air Act. TAC

1

¶¶ 177, 182. But, as AmFree does not dispute, none of those sales commitments apply to sales in Illinois, and neither would any action to enforce them.

No matter, says AmFree; one of the companies that made those commitments (Navistar) is located in Illinois, so an enforcement action could hypothetically be brought here. Opp. 10. And, AmFree continues, even though that enforcement action would exclusively concern sales outside of Illinois, that mere possibility is enough to subject Defendant Cliff to jurisdiction here. What's more, even an action "in California" might influence Navistar's decisions in Illinois. Opp 10–11.

The staggering breadth of AmFree's approach would allow state officials—or anyone else, for that matter—to be dragged into court in a foreign state any time a party there has made potentially enforceable commitments to them. And not just contractual commitments, either; any kind of legal obligation—including state laws and regulations—could suffice. That approach would leave personal jurisdiction with few meaningful limits, and Courts have roundly rejected it. *Rogers v. City of Hobart*, 996 F.3d 812 (7th Cir. 2021) (no jurisdiction in Illinois over Indiana officer posting arrest warrant in Illinois for Indiana crime); *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occup. Safety & Health of the State of Cal.*, 1 F.4th 346, 354 (5th Cir. 2021) (no jurisdiction over California agency that sought fines for California-related conduct from Texas company). Moreover, AmFree cannot "base jurisdiction on a contact that did not exist at the time they filed suit." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 707 (7th Cir. 2019). So the mere "*possibility* that an out-of-state official has made, or will make, additional [forum state] contacts" does not suffice for jurisdiction. *Bulkley & Assocs.*, 1 F.4th at 353 (5th Cir. 2021).

B.  **Other Provisions Are Not Related to AmFree's Preemption Claim**

AmFree's attempt to base jurisdiction on other provisions also fails. Specifically, AmFree argues that the commitments not to oppose other states' adoption of California's standards have

2

"in fact been performed in Illinois," Opp. 11, pointing to comments submitted by Ford and EMA in a Illinois rulemaking. Opp. 4. But neither those provisions nor those comments are relevant to AmFree's sole claim, "that the Partnership is a prohibited attempt to enforce preempted emission standards" under Section 209(a) of the Clean Air Act. Opp. 17. Because Section 209(a) says nothing about those commitments, AmFree cannot rely on them to establish minimum contacts related to a preemption claim under Section 209(a). Mot. to Dismiss, ECF No. 125 (MTD), p. 10 (citing *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014)); *see also B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 863 (7th Cir. 2024) (selling battery models in Indiana unrelated to claim over explosion of different model).

In a failed attempt to show its preemption claim is "intrinsically linked" to the provisions about participation in state rulemakings, *J.S.T. Corp. v. Foxconn Inter. Tech. Ltd.*, 965 F.3d 571, 576 (7th Cir. 2020), AmFree contends any part of the Partnership can justify jurisdiction over AmFree's claim. *See* Opp. 10. The substance of AmFree's claim, however, is that "enforcing the Agreement's promise of compliance"—that is, the sales commitments—"through state contract law would conflict with federal law." TAC ¶¶ 177, 182, *see also* Opp. 10. And while AmFree seeks *relief* against the entire Partnership, a preemption *claim* against a multifaceted contract like the Partnership can only be assessed provision by provision, because "the mere fact that one part of the [Partnership] is preempted does not mean that other parts of the [Partnership] are preempted, or that the [Partnership] as a whole is preempted." *Pro. Towing & Recovery Operators v. Box*, 965 F. Supp. 2d 981, 995 (N.D. Ill. 2013) (quoting *Cal. Tow Truck Ass'n v. City & County of San Francisco*, 693 F.3d 847, 860 (9th Cir. 2012)). Indeed, AmFree acknowledges the enforcement it seeks to enjoin could well be limited to individual sales commitments, the only ones that bear on AmFree's claim. *See* Opp. 10–11.

3

AmFree tries to stitch the Partnership's speech provisions together with its sales commitments by arguing that EMA (and Ford) remained neutral in Illinois's post-Partnership rulemaking, making it more likely that certain of the Partnership's sales commitments will ultimately apply in Illinois.[1] Opp. 6. But that these events allegedly transpired *in Illinois* owes not to Defendant Cliff's "own choice," *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021), but to other entities' decision to petition for a rulemaking there, MTD 8.

AmFree's version of events is also wrong. EMA's most recent comment letter argued that the Illinois Pollution Control Board should not adopt California standards because, said EMA, it would lack legal authority to implement them. Def.'s Second Req. for Judicial Notice (RJN2), Ex. A, p. 4–5. The Board acknowledged EMA's argument in its announcement staying proceedings. RJN2, Ex. B, p. 6. That announcement undercuts AmFree's story further, by indicating Illinois will not adopt California's standards absent resolution of pending litigation to determine whether the standards are in fact preempted. At that point, the standards themselves—not the Partnership's sales commitments—would govern Illinois sales. So EMA's alleged "performance" in that rulemaking is even less relevant to AmFree's claim now.

C. **Other Parties' Illinois Residency Does Not Support Jurisdiction Over Defendant Cliff**

AmFree resorts to arguing that whether the commitments it challenges apply in Illinois does not matter, because they were *negotiated* with Illinois-based entities. But that argument does not work either.

---

[1] That the speech provisions are related to CARB's interests in the Partnership, including regulatory stability, reducing emissions, and conserving agency resources, *see* Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. 15-18, ECF No. 73, *Daimler Truck N. Am. LLC v. CARB*, 2:25-cv-02255-DC (E.D. Cal. filed Aug. 11, 2025), does not mean they relate to AmFree's preemption claim against other provisions, *see Pro. Towing & Recovery Operators v. Box*, 965 F. Supp. at 995.

4

AmFree's argument principally hangs on the notion that Cliff "initiated negotiations … by sending a letter to EMA in Illinois." Opp. 6, *see also* Opp. 7 ("Cliff sent letter to Illinois to initiate negotiations"). That notion is both wrong and irrelevant. As the letter itself and the declaration upon which AmFree relies both indicate, the letter simply "invit[ed] discussion of unresolved issues," including those left unresolved by EMA's decision to dismiss a lawsuit it had filed in California. ECF No. 138-2 ¶¶ 9–10; *id.* Ex. A. AmFree's declarant does not assert that this letter initiated the negotiations for the Partnership. *See* ECF No. 138-2, Ex A. And the letter itself proposes the parties "continue" discussions. *Id.,* p. 2. Indeed, a recent court filing from four other signatories tied the start of negotiations not to the letter but to the EMA lawsuit the letter referenced. *Daimler*, ECF No. 23, at 8. Whenever negotiations over the Partnership began, it was not in a letter proposing to continue discussions that had plainly already started. *See Bolger v. Nautica Int'l, Inc.*, 861 N.E.2d 666, 672 (Ill. App. Ct. 2007) (no jurisdiction when "settlement agreement arose out of [plaintiff's] initial choice" to contact defendant).

Regardless, "jurisdiction does not turn on which party 'started it.'" *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996). That warning applies with particular force to a letter that in no way expressly aimed at Illinois. The letter was sent to 30 manufacturers across ten states and seven countries. *See* ECF No. 138-2, Ex. A, p. 3–6. It focused on actions EMA and its members had taken or could take in California: dismissing EMA's California lawsuit, selling cleaner vehicles and engines in California, and reducing their emissions in California. *Id.*, p. 1–2.

For similar reasons, AmFree cannot rely on Defendant Cliff's further communications with EMA and another Illinois-based signatory (Navistar). *See* Opp. 6–7, 11. The Seventh Circuit has held far more pervasive communication with Illinois parties insufficient. For example, in *North Grain Mktg., LLC v. Greving*, nine years of communicating and contracting with an Illinois

5

distributor the defendant first met in Illinois was insufficient, because the subject matter was outside Illinois. 743 F.3d 487, 490, 494 (7th Cir. 2014); *accord Brook v.McCormley*, 873 F.3d 549, 551, 553 (7th Cir. 2017) (cited at Mot. 9).[2]

AmFree's cases all depend on far more than just communications and negotiations. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985) (cited at Opp. 7) ("long-term and exacting regulation of his business from Burger King's Miami headquarters"); *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 764 (7th Cir. 2008) (cited at Opp. 9) (contract performance "consisted entirely of administrative services carried out . . . in Illinois."); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 710 (7th Cir. 2002) (cited at Opp. 9) (travel to Illinois to meet plaintiff about proposed venture); *Viktron Ltd. P'ship v. Program Data Inc.*, 759 N.E.2d. 186, 196–98 (Ill. App. Ct. 2001) (cited at Opp. 7) (defendants promised "training, service and support in" Illinois).

*Ford*, cited at Opp. 9–10, also does not help AmFree. The defendant there was subject to product-liability suits in Montana and Minnesota because Ford had contacted the forum states "[b]y every means imaginable," including "billboards, TV and radio spots, print ads, [] direct mail," ubiquitous repair services, and dozens of dealerships selling the vehicle model that hurt plaintiffs. *Ford,* 592 U.S. at 355, 365. The place of sale of the "particular car" involved in the claim did not matter, since the company had done everything it could to make it more likely that the same model would be driven in Montana and Minnesota, exposing those states to the same wrong that gave rise to the claim. *Id.* at 355.

By contrast, the sum total of Defendant Cliff's Illinois conduct with respect to the challenged sales commitment was an agreement in which companies mostly located outside

---

[2] Despite AmFree's efforts to distinguish *Brook*, Opp. 10, n.2, the "only link to the forum" here is third parties (EMA and Navistar), not the subject matter of the claim.

6

Illinois made sales commitments that did and do not apply in Illinois. MTD 3–4. Indeed, the only way AmFree tries to allege those commitments are harming anyone in Illinois is by pointing to members (only one of whom is located in Illinois to begin with) who are reaching outside of Illinois to "look nationwide for the best price when making purchasing decisions." TAC ¶ 131.

AmFree makes a last-ditch bid to leverage Navistar and EMA's Illinois residency by recasting its claim as one for "unlawful conspiracy," Opp. 1; *see also* Opp. 8 (invoking "conspiracy-jurisdiction case law"). But if that theory is even available in Illinois, *cf. Green v. Advance Ross Elecs. Corp.*, 427 N.E.2d 1203, 1208 (Ill. 1981) ("The idea of jurisdiction based on the acts of co-conspirators has been questioned."), this is not a conspiracy case.

AmFree's sole claim is preemption under Section 209(a) of the Clean Air Act, 42 U.S.C. § 7543(a). The elements of that claim—that a "State" has "adopt[ed] or attempt[ed] to enforce" a prohibited standard—do not include conspiracy. *See* 42 U.S.C. § 7543(a). Section 209(a) does not apply to the trade association or manufacturers AmFree claims are co-conspirators. AmFree thus cannot "allege an actionable conspiracy." *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1392–93 (7th Cir. 1983). And, because nothing about the Partnership targets Illinois in any way related to AmFree's claim, AmFree also cannot allege a "conspiracy to do harm in Illinois." *Cleary v. Philip Morris, Inc.*, 726 N.E.2d 770, 773 (Ill. App. Ct. 2000); *see also Knaus v. Guidry*, 906 N.E.2d 644, 657–58 (Ill. App. Ct. 2009) (requiring allegation that co-conspirators committed "tortious act within Illinois").[3]

---

[3] The conspiracy jurisdiction cases cited by AmFree involve conspiracies where a completed tort or unlawful act was fully carried out in the forum state (among other places). *E.g.*, *Textor*, 711 F.2d at 1392 (co-conspirators met in Illinois, formed plans to, and did in fact discriminate against women's athletes based there); *Knaus*, 906 N.E.2d at 649 (co-conspirators retained in an Illinois bank account the funds at issue in lawsuit).

### D. Traditional Notions of Fair Play and Substantial Justice Favor Dismissal

Even if Defendant Cliff's minimal contacts with Illinois could suffice, fairness and justice provide a separate basis for denying jurisdiction. MTD 10–11. AmFree resists that conclusion by arguing *neither* Defendant Cliff nor California have any cognizable interest in where this dispute is resolved, barring any "grave inconvenience" to Defendant Cliff. Opp. 14. But dragging Defendant Cliff to Illinois to defend actions he took in California does pose such an inconvenience, MTD 10, especially now that he is defending the same actions against the same claim in California, *see* infra pp. 12–13. And, in any capacity, he has a clear federalism interest in not "submitting to the coercive power of a State that may have little legitimate interest in the claims in question." MTD 10 (quoting *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 17–18 (2025)). California has a strong federalism interest in providing a forum for challenges to its officials' (and citizens') actions to address California pollution, including challenges to "the means" they use to do so, Opp. 14.

Finally, letting AmFree's claim proceed in Illinois would violate "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *Tamburo v. Dworkin*, 601 F.3d 693, 709 (7th Cir. 2010); *see also Schoeps v. Sompo Holdings, Inc.*, 736 F. Supp. 3d 582, 605 (N.D. Ill. 2024), *appeal filed* March 11, 2025 (7th Cir. Case No. 25-1405).

## II. VENUE IS IMPROPER IN THIS DISTRICT

AmFree's inability to meet its "more rigorous" burden to show venue is proper provides an independent basis for dismissal. MTD 12 (quoting *Vera Bradley Designs, Inc. v. Denny*, No. 1:18-CV-70-TLS, 2018 WL 3633986, at *4 (N.D. Ind. July 30, 2018)). AmFree emphasizes that a substantial part, not a majority, of the events giving rise to its claim need to have occurred in this district. Opp. 14-15. But even with that framing, AmFree still fails to meet its burden.

8

AmFree asserts that EMA's performance of the Partnership in this district independently supports venue. *Id.* at 15. But while performance of a contract may help determine proper venue, it must still constitute a "substantial portion of the activities *giving rise to the claim*." *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 879 (N.D. Ill. 2015) (emphasis added) (quotation omitted); *see also Moran Indus., Inc. v. Higdon*, No. 07 C 6092, 2008 WL 4874114, at *5–6 (N.D. Ill. June 6, 2008) (instructing that venue must be proper as to each claim, parsing the "acts that gave rise to" certain claims, and concluding that venue was improper for those claims because such acts occurred elsewhere). AmFree's own cited authority stands for this premise. *See Beveridge v. Mid-West Mgmt., Inc.*, 78 F. Supp. 2d 739, 746 (N.D. Ill. 1999) (determining where venue is proper requires "determining where a claim arose").

AmFree contends that EMA performed certain *terms* of the Partnership when it submitted comments to the Illinois Pollution Control Board. *See supra* pp. 2–3. Those terms, however, are independent of the ones AmFree challenges with its single cause of action and so cannot support venue for that claim. *Id.*; MTD 13. AmFree now attempts to recast its suit as a challenge to the entire Partnership, not just a "particular provision." Opp. 16. But AmFree's description of its claim, like the statute itself, belies that effort: "AmFree's claim [is] that the Partnership is a prohibited attempt to enforce preempted emission standards." *Id.* at 17; *see also supra* pp. 1, 2–3.

Hoping to draw a more direct connection to its preemption claim, AmFree also argues that truck manufacturers perform their obligations under the Partnership by "coordinating through" EMA, which is itself based in Illinois. Opp. 15. It is entirely unclear why manufacturers would need to coordinate their sales—the only conduct governed by the allegedly preempted provisions—with each other or their trade association, given that each manufacturer made its own sales commitments. AmFree's speculative allegations about undefined "coordination" with

9

EMA is "too attenuated to constitute a substantial portion of activity giving rise to [AmFree's] claim." *Allstate*, 80 F. Supp. 3d at 880. And, again, AmFree cannot be referring to "coordination" over sales of vehicles or engines in *Illinois*, *see* Opp. 15, because (as remains undisputed) the Partnership's sales commitments do not apply in Illinois.

Without Partnership performance, AmFree is left with Partnership negotiation. But that, too, fails to establish venue. Communications from Cliff and his staff to Partnership signatories while those signatories were in Illinois is not enough to support venue. MTD 12–13 (citing *MB Fin. Bank, N.A. v. Walker*, 741 F. Supp. 2d 912, 917-18 (N.D. Ill. 2010)); *see also supra* p. 5-6. And none of AmFree's cases hold otherwise; none found venue proper based on interstate communications alone. True, in *Imperial Crane Services, Inc. v. Cloverdale Equipment Co.* (cited at Opp. 15), the parties negotiated the contract from their respective offices in Michigan and Illinois. No. 13 C 04750, 2013 WL 5904527, at *4 (N.D. Ill. Nov. 4, 2013). But the court held venue proper in Illinois for the additional reason that "[t]he alleged breach itself occurred because of the material representations or omissions" made to one of the parties while at his office in Illinois. *Id.*; *see also id.* at *3 (citing cases in which both communications *and payment* (or lack thereof, resulting in breach) were made to parties in the forum state). Similarly, in *Moore v. AT&T Latin Am. Corp.* (cited at Opp. 15), the court found venue proper in Illinois both because the contracts were negotiated through plaintiffs and their counsel in Illinois and because plaintiffs tried to obtain the benefit of their bargain—and so felt "the effect of [the] breach"— there. 177 F. Supp. 2d 785, 789 (N.D. Ill. 2001).

Communications alone can justify venue only when they themselves are integral to the cause of action. Two cases illustrate the point. In *Interlease Aviation Invs. II (Aloha) LLC v. Vanguard Airlines*, contacts with parties in the forum state established venue for claims that the

Defendants committed fraud by "negotiat[ing] in bad faith." 262 F. Supp. 2d 898, 914 (N.D. Ill. 2003). Likewise, in *Fogelson v. Iatrides*, communications into the district supported venue for a fraudulent misrepresentation claim because they included a letter containing "the most concrete alleged misrepresentation." No. 99 C 6892, 2000 WL 631293, at *3 (N.D. Ill. May 12, 2000). The communications themselves thus had a "significant relationship to th[e] cause of action." *Id.*

AmFree's focus on the "alternative option" to the "historical predicate" test for establishing venue, Opp. 16 (emphasis and citation omitted), therefore misses the mark. There is no "sufficient relationship" between the communications "transmitted to . . . the district" and "the cause of action." *Id.* (quoting *Allstate*, 80 F. Supp. 3d at 877). Neither the fact nor the substance of those communications, nor anything else about the Partnership's "formation," *id.*, is the basis for AmFree's preemption claim. The Partnership's sales commitments (and their alleged enforcement) are. *See* Opp. 17; TAC ¶¶ 179–182. None of the "purported wrongdoing" —"the acts that truly gave rise to" AmFree's preemption claim—would happen in Illinois, because the commitments do not apply to sales here. *MB Fin. Bank*, 741 F. Supp. 2d at 917.

### III. IF NOT DISMISSED, THE CASE SHOULD BE TRANSFERRED.

If the Court does exercise jurisdiction, it should do so only long enough to transfer the case to the Eastern District of California under 28 U.S.C. § 1404(a). MTD 14-15. AmFree does not dispute that venue and personal jurisdiction are proper in the Eastern District. *See* Opp. 17–20. Instead, it opposes transfer by relying on a case about *forum non conveniens*. Opp. 17 (citing *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 643 (7th Cir. 2003)).[4] That line of cases "overstates the showing that is required" to justify transfer. 15 Wright & Miller, Federal Practice

---

[4] "[W]ith respect to cases wholly within the system of U.S. federal courts, the doctrine [of *forum non conveniens*] has been largely replaced by the transfer of venue statute, 28 U.S.C. § 1404(a)." *Hyatt Int'l Corp.*, 302 F.3d at 717.

11

and Procedure § 3848 (4th ed., updated May 21, 2025). Under Section 1404(a), a "presumption" in favor of the plaintiff's choice of forum, "is not to be treated … as a nigh-insurmountable obstacle to dismissal." *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 753 (7th Cir. 2008). And AmFree's choice of forum should be further discounted because AmFree is not based in Illinois. *Id*. at 752. Regardless, under any standard, transfer is clearly warranted here.

      The Eastern District is far more convenient for Defendant Cliff and his counsel, which AmFree does not dispute. Opp. 17. Nor does AmFree argue that the Eastern District would be inconvenient. Indeed, represented by the same D.C.-based counsel as here, AmFree regularly litigates against Defendant Cliff in that district and the Ninth Circuit. MTD 11, 14. AmFree suggests that transfer might require more people to travel longer distances. Opp. 18. But it never explains why its standing declarants would need to travel to California (or even that they would appear in Illinois). And it neglects to mention that, of the manufacturers that signed the Partnership, four—including the one based in Illinois—are already litigating this same claim in the Eastern District.

      The interests of justice also overwhelmingly favor transfer, and increasingly so. What AmFree describes only as a "recent suit between truck manufacturers and Cliff," Opp. 18, raises the same preemption claim against the Partnership that AmFree makes here. Def. Opp. to Mot. to Intervene, ECF No. 132, at 3, 7, 9. And that case is moving much faster than this one: Already, a preliminary injunction motion on this claim (and others) is almost fully briefed and set for hearing, Minute Order, *Daimler*, ECF No. 54; the United States has intervened and joined that motion, *Daimler*, *id.,* and the Eastern District has declined to transfer the case. *Daimler*, ECF No. 72. By comparison, this case still has multiple pending motions, plus a potential preliminary injunction motion looming. ECF Nos. 121, 121-2, 125.

12

The transfer statute "was designed to prevent the situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 916 (N.D. Ill. 2009) (quotation omitted); *see also Cont'l Ill. Nat'l Bank & Tr. Co. of Chicago v. Stanley*, 606 F. Supp. 558, 564 (N.D. Ill. 1985) (to prevent "duplicity of actions" "cases should be transferred to districts where related actions are pending."). Although AmFree claims transfer "would require duplication of judicial effort *by the Eastern District*," Opp. 20 (emphasis added), the interests of justice lie in "conserving scarce judicial resources by efficient administration of the court system" as a whole. *Jaramillo,* 664 F. Supp. 2d at 915 (quotation omitted). It conserves nothing for two different district courts to hear the same claim over the same conduct against the same defendant, and with both cases potentially featuring motions for preliminary relief. The ability to avoid such duplication "weighs heavily in favor of transfer." *Id.* at 916.

AmFree's argument that California and Illinois somehow have nearly equivalent interests in this case, Opp. 20, fares no better. A central purpose of the Partnership was to secure emissions reductions in California, not Illinois. The sales commitments—the only parts of the Partnership AmFree challenges—apply in California, not Illinois. Same with all of Defendant Cliff's commitments. And to the extent the speech provisions apply in Illinois, that reflects "'nothing special' about Illinois." *Koos, Inc. v. Performance Indus.*, 747 F. Supp. 487, 491 (N.D. Ill. 1990). Given these facts, "this litigation undoubtedly has the most significant contacts" with California. *Id*.

## CONCLUSION

This case should be dismissed for lack of jurisdiction and proper venue, or else transferred.

13

Dated: October 1, 2025

Respectfully Submitted,

Rob Bonta
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General

<u>*/s/ Jonathan A. Wiener*</u>
JONATHAN A. WIENER (pro hac vice)
BENJAMIN P. LEMPERT (pro hac vice)
Deputy Attorneys General
 455 Golden Gate Ave, Suite 11000
 San Francisco, CA 94102
 Tel: (415) 510-3549
 jonathan.wiener@doj.ca.gov
*Attorneys for Defendant Steven S. Cliff, in his official capacity as Executive Officer of the California Air Resources Board*

OK2024305825
44818167.docx

14