IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

|  |  |
|---|---|
| AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE**,**<br><br>Plaintiff,<br><br>v.<br><br>STEVEN S. CLIFF, in his official capacity as the executive officer of the California Air Resources Board,<br><br>Defendant. | **Case Number:** 3:24-cv-50504<br><br>**Judge**: Hon. Iain D. Johnston<br><br>**Magistrate Judge**: Michael F. Iasparro |

## APPENDIX OF MATERIALS ATTACHED PER STANDING ORDER

**Contents**

1. *Fogelson v. Iatrides*, No. 99 C 6892, 2000 WL 631293 (N.D. Ill. May 12, 2000)

2. *Imperial Crane Services, Inc. v. Cloverdale Equipment Co.*, No. 13 C 04750, 2013 WL 5904527 (N.D. Ill. Nov. 4, 2013)

3. *Moran Indus., Inc. v. Higdon*, No. 07 C 6092, 2008 WL 4874114 (N.D. Ill. June 6, 2008)

4. *Vera Bradley Designs, Inc. v. Denny*, No. 1:18-CV-70-TLS, 2018 WL 3633986 (N.D. Ind. July 30, 2018)

2000 WL 631293
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Gerald W. FOGELSON and
Georgia B. Fogelson, Plaintiffs,

v.

Gus IATRIDES and Kay Iatrides, Defendants.

No. 99 C 6892.
|
May 12, 2000.

*MEMORANDUM OPINION*

KOCORAS, J.

**\*1** This matter comes before the Court on Defendant's motion to dismiss for improper venue or to transfer venue pursuant to 28 U.S.C. § 1391. For the reasons set forth below, the Court denies Defendant's motion.

BACKGROUND

Plaintiffs Gerald W. Fogelson ("Fogelson") and his wife, Georgia B. Fogelson (collectively, the "Fogelsons") filed this action against Defendants Gus Iatrides ("Iatrides") and his wife, Kay Iatrides, alleging fraudulent misrepresentation with respect to the ownership of a parcel of land. The Fogelsons are residents of Illinois while Gus and Kay Iatrides are residents of Indiana.

Prior to 1981, Fogelson, by his wife as beneficiary under a Lake County Trust Co. trust, owned a parcel of land in Lake County, Indiana. On or about January 10, 1981, Fogelson caused the trust to convey the northern portion of the land (the "North Parcel") to Gus and Kay Iatrides, Deno and Helen Frankos (collectively, the "Frankos"), and Don and Teresa Nowinski (collectively, the "Nowinskis"). Fogelson retained the remaining South Parcel. Between 1981 and 1990, the Lake County Trust Co. held the trust as trustee pursuant to a trust agreement, which had as beneficiaries Gus and Kay Iatrides, the Frankos, and the Nowinskis. The trust agreement divided the North Parcel into three parcels, A, B, and C. Prior to May 16, 1990, the Lake Trust Co. conveyed Parcel A to the Frankos and Parcels B and C to Gus and Kay Iatrides.

Prior to and in May of 1997, Fogelson began discussing with Iatrides the prospect of combining their properties for economic development. Iatrides allegedly represented to Fogelson that he and his wife owned Parcels B and C. Eventually, Fogelson and Iatrides agreed to pursue a joint venture and combine their respective properties for development. Because Gus and Kay Iatrides owned Parcel C jointly, Fogelson needed both of them to consent to the joint venture agreement. In a May 21, 1997 letter (the "Letter Agreement"), Fogelson memorialized the joint venture agreement and sent it to Iatrides. Both Gus and Kay Iatrides signed the letter and returned a copy to Fogelson in Chicago.

In early 1998, Fogelson and Iatrides agreed to purchase Parcel A from the Frankos. Although the price asked, $275,000, was allegedly twice the fair market value, Fogelson agreed to purchase Parcel A so that he and Iatrides could complete the assemblage of the property and maximize development opportunities. Because the value of Fogelson's South Parcel was less than the value of Iatrides Parcels B and C combined, Fogelson agreed to pay more of the purchase price for Parcel A to equalize the parties' initial contributions to the venture. Moreover, because Iatrides was unable to pay for his share of Parcel A, Fogelson purchased it entirely himself and conveyed Parcel A to the Lake County Trust Co. as trustee. When Iatrides raised sufficient funds to pay for his share of Parcel A, Fogelson caused the trust to convey approximately half of Parcel A jointly to Gus and Kay Iatrides in exchange for Iatrides' share of the purchase price.

**\*2** In 1992, the Nowinskis had filed suit in the Lake Circuit Court in Crown Point, Indiana against Gus and Kay Iatrides along with others, alleging that the conveyance of Parcel C from the Lake County Trust Co. to Gus and Kay Iatrides was wrongful and in breach of the trust agreement between the Frankos, the Nowinskis and Gus and Kay Iatrides. The Nowinskis, in their action, requested that the Nowinskis be adjudged and decreed the owners of Parcel C and be awarded damages.

Although Fogelson requested in the Letter Agreement in May 1997 that Iatrides provide title reports for both Parcels B and C, Iatrides never provided the information. Finally, in early 1999, Fogelson ordered title reports on all of the parcels comprising the property. The title report indicated that there was a *lis pendens* from Nowinski on Parcel C. Although Iatrides, when confronted by Fogelson, claimed that there had

been a mistake and that the Nowinskis' action was no longer pending, the Nowinskis' case still remains pending.

As a result of the title dispute over Parcel C, the Fogelsons brought this action against Gus and Kay Iatrides for fraudulent misrepresentation. Between 1998 and 1999, Fogelson alleges that he spent tens of thousands of dollars and hundreds of hours in designing, obtaining approvals for, and marketing the property for development. Fogelson further claims that Gus and Kay Iatrides' representation that they owed Parcel C was a material fact underlying Fogelson's decision to enter into the joint venture; purchase Parcel A at an inflated price; convey Parcel A for less than half the purchase price; and undertake substantial steps and expense to develop the property.

Presently, Kay Iatrides brings this motion to dismiss, pursuant presumably to Federal Rule of Civil Procedure 12(b)(3), for improper venue under 28 U.S.C. § 1391 or to transfer this action to the Northern District of Indiana.

### LEGAL STANDARD

When deciding a motion to dismiss for want of improper venue, the Court must accept all well-pleaded facts as true unless controverted by the defendant's affidavits. Any factual disputes must be resolved in favor of the plaintiff. *See Saylor v. Dyniewski,* 836 F.2d 341, 342 (7th Cir.1988); *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir.1987). It is with these principles in mind that the Court evaluates Defendants' motion.

### DISCUSSION

Defendant Kay Iatrides argues that venue is improper in the Northern District of Illinois but is proper in the Northern District of Indiana.

Because this case comes before the Court on the basis of diversity, the Court looks to 28 U.S.C. § 1391(a) to determine which venue is proper. Section 1391(a) provides:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only

in (1) a judicial district where any defendants resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(a).

**\*3** Kay Iatrides is correct that venue is proper in the Northern District of Indiana under § 1391(a)(1). Both Defendants in this action reside in Indiana and in the Northern District of Indiana. Thus, venue is proper there. *See id.* However, that venue is proper in the Northern District of Indiana does not mean that venue cannot also be proper in the Northern District of Illinois. *See, e .g., Media Communications, Inc. v. Multimedia, Sign Up, Inc.,* No. 99 C 5009, 1999 WL 966078, at *3 (N.D.Ill. Oct. 8, 1999); *First Health Group, Corp. v. Sanderson Farms, Inc.,* No. 99 C 2926, 2000 WL 139474, at *2 (N.D.Ill. Jan. 31, 2000).

Venue is also proper in the Northern District of Illinois under § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois. "The standard set forth in § 1391(a)(2) may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." *Consolidated Ins. Co. v. Vanderwoude,* 876 F.Supp. 198, 200-01 (N.D.Ind.1995), quoting *Sacody Technologies v. Avant, Inc.,* 862 F.Supp. 1152, 1157 (S.D.N.Y.1994). Here, Fogelson has alleged several communications transmitted to or from the Northern District of Illinois, which have a sufficient relationship to this cause of action. Fogelson claims that he had several telephone conversations from his office in Chicago, Illinois, with Iatrides regarding the development of their properties. Sometimes Fogelson contacted Iatrides, but other times Iatrides called Fogelson in Chicago. Moreover, Fogelson claims that he prepared the Letter Agreement in Chicago and mailed it from Chicago. Gus and Kay Iatrides received and signed the Letter Agreement and sent it to Fogelson in

Chicago. The Letter Agreement has a significant relationship to this cause of action, for it is this document that allegedly seems to contain the most concrete alleged misrepresentation by Gus and Kay Iatrides of their ownership of Parcel C.

Kay Iatrides, however, claims that venue with respect to her is improper in the Northern District of Illinois because the only alleged misrepresentation made by her was her signature on the Letter Agreement. She seems to believe that because she allegedly made only one misrepresentation, it cannot constitute a "substantial part of the events or omissions giving rise to the claim." 28 U.S.C. § 1391(a)(2). However, her alleged misrepresentation in the Letter Agreement sent from Fogelson in Chicago and returned to Fogelson in Chicago is a substantial part of the events or omissions giving rise to the claim. Not only did Kay Iatrides make the alleged misrepresentations giving rise to this claim in the Letter Agreement by signing her name, but her signature was significant because Fogelson believed that she owned Parcel C jointly with her husband. Accordingly, a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois with respect to both Gus and Kay Iatrides, and venue is proper under § 1391(a)(2).

 *4  Defendant Kay Iatrides suggests that if this Court does not dismiss this case for lack of proper venue under § 1391(a), then it should transfer this case to the Northern District of Indiana. Because the Court has found that the Northern District of Illinois is a proper venue, the Court presumes that Defendant seeks transfer pursuant to 28 U.S.C. § 1404(a), rather than 28 U.S.C. § 1406(a). Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under § 1404(a), "the movant ... has the burden of establishing that the suit should be transferred" and must demonstrate that "the balance of interests weighs strongly in favor of proceeding in the proposed transferee district." *Heller Financial, Inc. v. Nutra Food, Inc.,* 655 F.Supp. 1432, 1433 (N.D.Ill.1987). Courts apply a three-factor analysis when faced with a motion to transfer venue under § 1404(a). Under this analysis, a court may transfer a case if the defendant can demonstrate: (1) venue is proper in both the transferor and the transferee courts; (2) transfer is for the convenience of the parties and the witnesses; and (3) transfer is in the interests of justice. *See Symons Corp. v. Southern Forming and Supply, Inc.,* 954 F.Supp. 184, 186 (N.D.Ill.1997).

However, neither party has directly addressed the issue of transfer pursuant to § 1404(a), nor provided support for striking the balance of the interests in its favor. Consequently, the plaintiffs' forum selection shall not be disturbed.

CONCLUSION

For the reasons set forth above, the Court denies Defendant's motion to dismiss for improper venue or to transfer venue.

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 631293

---

**End of Document** 

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Imperial Crane Services, Inc. v. Cloverdale Equipment Company, Not Reported in Fed....

Case: 3:24-cv-50504 Document #: 144-1 Filed: 10/01/25 Page 5 of 23 PageID #:1500

2013 WL 5904527
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

IMPERIAL CRANE SERVICES, INC., Plaintiff,
v.
CLOVERDALE EQUIPMENT COMPANY, Defendant.

Case No.: 13 C 04750
|
November 4, 2013

**Attorneys and Law Firms**

Ryan A. Hiss, Lyman & Nielsen, LLC, Oak Brook, IL, for
Plaintiff.

Howard William Burdett, Jr., Boyle Burdett, Grosse Pointe
Park, MI, John C. Gekas, Arnstein & Lehr, LLP, Chicago, IL,
for Defendant.

*OPINION AND ORDER*

Joan H. Lefkow, U.S. District Judge

**\*1** Plaintiff Imperial Crane Services, Inc. ("Imperial")
filed a one-count complaint against defendant Cloverdale
Equipment Company ("Cloverdale") alleging breach of
warranty in connection with two cranes Cloverdale sold to
Imperial. Cloverdale has moved to dismiss the complaint
pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28
U.S.C. § 1391, or, in the alternative, to transfer this action
to the United States District Court for the Eastern District of
Michigan pursuant to 28 U.S.C. § 1404. For the following
reasons, Cloverdale's motion is denied. [1]

**BACKGROUND** [2]

Imperial is an Illinois corporation that supplies cranes and
other equipment and machinery, together with operators
for the cranes, equipment and machinery. Cloverdale is a
Michigan corporation that sells and rents cranes and related
equipment and machinery.

In March 2013, Imperial sought cranes to rent or purchase that
it would then rent out to a customer for a construction project
in Cartagena, Colombia. Imperial learned that Cloverdale had

two 15–ton capacity carry deck cranes that would do the
job. Imperial and Cloverdale thus entered into negotiations
for the purchase of the two cranes. These negotiations took
place entirely over the phone, and were between Imperial's
vice president, Bill Tierney, and Cloverdale's president,
Todd Moilanen, from their respective offices in Illinois and
Michigan. The cranes themselves were located in Texas
during the negotiations. [3]

**\*2** Over the course of the negotiations, Moilanen confirmed
for Tierney that the two cranes Imperial sought to purchase
were ready to be shipped from Texas to Colombia and
immediately put to use. The parties settled on a price of
$107,500 per crane ($215,000 total), which Imperial was to
pay immediately via wire transfer from its bank account in
Cook County, Illinois, to Cloverdale's bank account in Ohio. [4]
One of the terms of the parties' agreement, which was oral and
never memorialized in writing, was that Imperial would take
possession of the cranes immediately in Port Houston, Texas,
and that Cloverdale would send Imperial the Manufacturer's
Statements of Origin for the cranes as soon as possible.

Based on Moilanen's representations regarding the readiness
of the cranes for the Colombia project, Imperial accepted and
paid for the cranes. After doing so, but before the cranes were
operated or used in the project, numerous defects in the cranes
were found requiring immediate repair before the cranes
could be used. The defects included engine leaks, swing
gearbox operation issues, damaged swing bearing and boom
wear pads, insecure counterweights, telescope cylinder leaks,
boom lift cylinder leaks, steer cylinder leaks, and hydraulic
tank leaks. The estimated cost of repairing the cranes was at
least $31,109.72.

When it learned of the repairs necessary to render the cranes
usable, Imperial notified Cloverdale that it was revoking
its acceptance of the cranes and demanded a full refund of
$215,000 in exchange for return of the cranes. Cloverdale
refused to refund to Imperial or take possession of the cranes
and has also refused to make or pay for the repairs on the
cranes. Imperial is currently incurring costs related to the
transportation and storage of the cranes.

Cloverdale has moved to dismiss the complaint for improper
venue pursuant to Federal Rule of Civil Procedure 12(b)(3)
and 28 U.S.C. § 1391. In the alternative, it has requested
that the court transfer the action to the Eastern District of
Michigan, where it has a declaratory action pending regarding
the same set of facts. [5]

Case: 3:24-cv-50504 Document #: 144-1 Filed: 10/01/25 Page 6 of 23 PageID #:1501

Imperial Crane Services, Inc. v. Cloverdale Equipment Company, Not Reported in Fed....

## ANALYSIS

### I. Federal Rule of Civil Procedure 12(b)(3) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action that is filed in an improper venue. *See* Fed.R.Civ.P. 12(b)(3); *Caballero v. Taylor,* No. 12 C 8645, 2013 WL 2898254, at *1 (N.D. Ill. June 13, 2013). When a defendant challenges venue, the plaintiff bears the burden of establishing venue is proper. *Nat'l Tech., Inc. v. Repcentric Solutions,* No. 13 C 1819, 2013 WL 3755052, at *5 (N.D.Ill. July 16, 2013) (citing *Int'l Travelers Cheque Co. v. BankAmerica Corp.,* 660 F.2d 215, 222 (7th Cir.1981)). If venue is improper, the court can either dismiss the suit or transfer it to a district in which the plaintiff could have filed it initially. *See* 28 U.S.C. § 1406(a).

**\*3** The proper bases for venue are found in 28 U.S.C. § 1391(b). Under that statute venue is proper in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). As it relates to subpart (1), an entity "with the capacity to sue and be sued in its common name under applicable law" is "deemed to reside" in any "judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* at § 1391(c)(2).

Venue can be proper in more than one district. "The test is not whether a majority of the activities pertaining to the case were performed in a particular district but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." *TruServ Corp. v. Neff,* 6 F.Supp.2d 790, 792 (N.D.Ill.1998). To determine proper venue in a breach of contract action, courts take a number

of factors into consideration, including "where the conduct underlying the breach occurred and where performance under the contract was to take place," *Moran Indus. v. Higdon,* No. 07 C 6092, 2008 WL 4874114, at *5 (N.D. Ill. June 26, 2008) (quoting *PKWare, Inc. v. Meade,* 79 F.Supp.2d 1007, 1016 (E.D.Wisc.2000)), and whether there was "[f]ailure to make payment in a district pursuant to a contract." *D'Ancona & Pflaum LLC v. M2 Software, Inc.,* No. 00 C 7150, 2001 WL 873021, at *1 (N.D.Ill. Aug. 2, 2001); *see also H & V Silver Mine, Inc. v. Cohen,* No. 96 C 3550, 1997 WL 639229, at *4 (N.D. Ill. Oct. 6, 1997). Additionally, "[w]here the underlying events are essentially communications made by two parties located in separate districts, '[t]he requirements of [§ 1391(b) (2) ] may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action.' " *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.,* No. 07 C 1394, 2008 WL 5423553, at *3 (N.D.Ill.Dec. 29, 2008) (quoting *Interlease,* 262 F.Supp.2d at 913).

In *Citadel,* for example, the court denied the defendant's motion to dismiss for improper venue where the parties had negotiated the contract from their respective offices in Illinois and Arkansas. *Citadel,* 2008 WL 5423553, at *3. The defendant argued that venue was improper in this district because all the substantial events took place in Arkansas and the parties' contract was for the construction of a building in Arkansas. The court rejected this argument as "oversimplif[ying] the parties' relationship." *Id.* Instead, it found that substantial events occurred in both states: the defendant sent a request for proposals to the plaintiff in Illinois; the plaintiff sent its proposal to the defendant in Arkansas; the parties communicated about the proposal from their respective offices; the defendant sent the plaintiff a signed authorization with a deposit; and the plaintiff began acting pursuant to that authorization. These communications constituted substantial events and were sufficient to support venue in this district. *Id.*

**\*4** Similarly, in *Walron Films, Ltd. v. Cinequanon Pictures International,* No. 97 C 3280, 1997 WL 779059, at *2 (N.D.Ill.Dec. 12, 1997), the court denied a motion to dismiss for improper venue because "venue is proper in this district even though venue may also be proper elsewhere." The plaintiff was a Delaware corporation with its principal place of business in Chicago. It was the parent of a California corporation that entered into a film distribution agreement with the defendant, another California corporation. The agreement was executed in California and provided that

Case: 3:24-cv-50504 Document #: 144-1 Filed: 10/01/25 Page 7 of 23 PageID #:1502

Imperial Crane Services, Inc. v. Cloverdale Equipment Company, Not Reported in Fed....

the defendant would direct payments from the film to a Chicago bank account. After the plaintiff brought suit, the defendant moved to dismiss under Rule 12(b)(3). It argued that proper venue was California "because two California corporations signed the Agreement in California." *Id.* The court disagreed, explaining it "is axiomatic that § 1391 does not contemplate a single appropriate district for venue." *Id.* The court held that venue was proper in this district as Illinois had "substantial" contacts with the events that gave rise to the suit (the defendant's failure to send payments to the Chicago bank).

Imperial argues that a substantial part of the events took place in this district. Namely, Imperial's vice president, Tierney, negotiated the sale of the cranes by telephone, email, and facsimile from his office in Illinois with Cloverdale's president, Moilanen. (Dkt. 11 Tierney Aff. at ¶ 18.) The alleged breach itself occurred because of the material representations or omissions that Moilanen made to Tierney while Tierney was at his own office in Illinois. (Dkt. 1 at ¶¶ 18–21, 50, 54–55.)

Relying on facts underlying the ill-fated lease of the eight cranes, and not Imperial's ultimate purchase of the two cranes, Cloverdale argues venue here is improper because a substantial part of the events giving rise to this suit "did not occur in Illinois–nearly the entire transaction was negotiated and performed in Michigan." (Dkt. 6 at 5.) Specifically, Moilanen attests that Imperial's representatives traveled to Michigan and inspected the eight cranes there and that the parties reached the lease agreement in Michigan. (Dkt. 6 Moilanen Aff. at ¶¶ 11–12.) But the agreement on which this action is based is not the agreement for the lease of eight cranes, it is the agreement for the sale of two cranes. While Imperial's alleged inspection in connection with the lease may eventually be at issue in this dispute, [6] it is incorrect for Cloverdale to assert that this inspection and acceptance of the cranes are "the *only* issue[s] in this case." (Dkt. 12 at 3 (emphasis in original).)

It is true that Moilanen negotiated the contract from his office in Michigan, but the same can be said of Tierney in Illinois. These negotiations and the alleged warranty that accompanied the sale of the two cranes are the substantial events at issue. Thus, "[a]lthough venue might be proper in [Michigan], § 1391(b)(2) does not require the court to determine the best venue for an action, but merely whether 'a substantial part of the events or omissions giving rise to the claim occurred' in the judicial district in which the action was brought." *Nat'l*

*Tech.,* 2013 WL 3755052, at *6 (quoting 28 U.S.C. § 1391(b) (2)). Substantial events surrounding the purchase of the cranes occurred in Illinois, making venue in this district proper. Thus, the Rule 12(b)(3) motion to dismiss is denied. [7]

## II. Motion to Transfer Pursuant to 28 U.S.C. § 1404

**\*5** In the alternative, Cloverdale moves to transfer this action to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a), under which the court may transfer venue to another district for "the convenience of parties and witnesses, in the interest of justice." To support a motion to transfer venue, "the moving party must show that (1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice." *See Gueorguiev v. Max Rave, LLC,* 526 F.Supp.2d 853, 856 (N.D.Ill.2007). The consideration the court gives each factor rests in the court's discretion, and the burden is on the moving party to demonstrate the transferee forum is more convenient. *See id.* at 856–57; *Citadel,* 2008 WL 5423553, at *3.

As the court has already determined venue is proper in this district, the first factor has been met. Venue would be proper in the Eastern District of Michigan because it is a district in which the defendant resides. *See* 28 U.S.C. § 1391(b)(1); *Citadel,* 2008 WL 5423553, at *4. The court thus turns to the convenience and interests of justice factors.

### A. Convenience of the Parties and Witnesses

The court considers multiple factors in deciding whether it would be more convenient to transfer the litigation. These factors include (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties in litigating in the respective fora. *See, e.g., Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.,* 42 F.Supp.2d 821, 833 (N.D.Ill.1999).

### i. Imperial's Choice of Forum and Situs of Material Events

Under § 1404(a), a plaintiff's choice of forum is generally entitled to substantial deference, particularly if it is the plaintiff's home forum. *Nat'l Tech.,* 2013 WL 3755052, at *7. This deference is "lessened where a plaintiff chooses a forum

Case: 3:24-cv-50504 Document #: 144-1 Filed: 10/01/25 Page 8 of 23 PageID #:1503

Imperial Crane Services, Inc. v. Cloverdale Equipment Company, Not Reported in Fed....

that has little connection with the relevant facts giving rise to the litigation." *See Caballero,* 2013 WL 2898254, at *3.

Where, as here, "the case involves two identical suits in distinct venues, this factor loses its significance entirely: each case has a plaintiff, and one of them will necessarily be disturbed." *Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.,* 626 F.3d 973, 979 (7th Cir.2010). But where one case is a declaratory judgment action and the other is a mirror-image action that seeks coercive relief, priority is generally given to the coercive action. *Id.* at 980. This is so even if the coercive action was filed after the declaratory judgment action because the first-to-file rule is not adhered to rigidly in the Seventh Circuit. Instead, filing order is only "one factor among many" that the court may consider. *See id.* at 977. The Seventh Circuit has also explained that it is appropriate to depart from the first-to-file rule "where one party files its lawsuit in anticipation of an impending suit by the opposing party" because this "behavior only exacerbates the risk of wasteful litigation." *Id.* at 980.

Cloverdale argues that this dispute is better adjudicated in the Eastern District of Michigan because there is a "mirror image" declaratory judgment action already pending there. (Dkt. 6 at 10.) Moilanen states that after he learned Imperial planned to file suit against Cloverdale in Illinois, Cloverdale filed an action in Michigan, six days before Imperial filed this suit. (*See* Dkt. 6 Moilanen Aff. at ¶¶ 31–32; Dkt. 11 Ex. 2; Dkt. 1.)

Although the Michigan action was filed first, the complaint in that action asserts a single claim for declaratory relief that mirrors this suit, which seeks coercive relief. (*See* Dkt. 11 Ex. 2.) "Thus, regardless of [Cloverdale's] filing of an action for declaratory judgment in the [Eastern District of Michigan], [Imperial] is the plaintiff in this suit and its choice of forum will be afforded deference." *Robinson Steel Co. v. Caterpillar Inc.,* No. 10 C 438, 2011 WL 923415, at *6 (N.D.Ind. Mar. 14, 2011); *see also Bank of Am., N.A. v. Illumination Station,* No. 10 C 3061, 2011 WL 1642526, at *3 (N.D.Ill. May 2, 2011). Moreover, and as discussed above, Imperial's choice of its home forum is entitled to weight because this district is connected to the facts giving rise to this dispute. *See, e.g., Caballero,* 2013 WL 2898254, at *3. This factor thus weighs against transfer.

## ii. Situs of Material Events

**\*6** Where the situs of material events is not concentrated in one district or another, this factor is "neutral." *See Caballero,* 2013 WL 2898254, at *3. As discussed above, material events occurred in both this district and the Eastern District of Michigan. This factor is thus a draw.

### iii. Convenience of the Parties

In evaluating this factor the court will consider "the parties' respective residences and their ability to bear the expenses of litigating in a particular forum." *Genocide Victims of Krajina v. L–3 Servs., Inc.,* 804 F.Supp.2d 814, 826 (N.D.Ill.2011). Cloverdale argues that the convenience of the parties favors Michigan because its witnesses and evidence are in Michigan and Imperial has shown itself able to travel to Michigan. (Dkt. 6 at 9.) Predictably, Imperial argues the opposite. (Dkt. 11 at 11.) Neither party argues that it would be unable to meaningfully present its case in the other's home forum. "Litigation in another district is inevitably inconvenient for a party," and the court therefore finds this factor does not favor either venue. *Nat'l Tech.,* 2013 WL 3755052, at *7.

### iv. Relative Ease of Access to Sources of Proof

Cloverdale argues this factor "slightly favors Michigan" because all documents relating to Imperial's inspection of the cranes in Michigan (in connection with the lease of the eight cranes) and all other relevant documents in Cloverdale's possession are located in Michigan. (Dkt. 6 at 8.) Imperial argues that its documents are in Illinois. It also points out that the cranes are currently located in Illinois (although Cloverdale protests that the cranes' current condition is "immaterial; that Imperial let the cranes deteriorate after it took possession of the cranes months ago is of no import to the outcome of this litigation" (dkt. 12 at 2)).

This factor does not strongly favor either venue because "documents and records are easily transportable (and, indeed, must be copied and delivered to the opponent no matter where the case will be litigated) and their location generally is not a persuasive reason for transfer." *Simonoff v. Kaplan, Inc.,* No 09 C 5017, 2010 WL 1195855, at *2 (N.D.Ill. Mar. 17, 2010). To the extent the current condition of the cranes will be relevant, the court finds it would not be too burdensome for Cloverdale representatives to travel to Illinois to inspect the cranes.

Case: 3:24-cv-50504 Document #: 144-1 Filed: 10/01/25 Page 9 of 23 PageID #:1504

Imperial Crane Services, Inc. v. Cloverdale Equipment Company, Not Reported in Fed....

### v. Convenience of Witnesses

"The determination of the convenience of witnesses is often considered the most important factor in the transfer balance." *Addiction & Detoxification Inst., LLC v. Rapid Drug Detox Ctr.,* No. 11 C 7992, 2013 WL 951115, at *4 (N.D.Ill. Mar. 11, 2013). The convenience of non-party witnesses is "substantially more important than the convenience of party witnesses" because party witnesses can easily "compel their employees' appearances at trial." *Id.*

Cloverdale's president, Moilanen, has sworn in his affidavit that in addition to relying on his own testimony and the testimony of various Cloverdale employees who reside in Michigan, he plans to call a third party witness, Patrick Henry. (Dkt. 6 Moilanen Aff. at ¶¶ 26–27.) Henry is employed by a non-party and was present for Imperial's inspection of the eight cranes in Cloverdale's yard in Michigan. (*Id.* at ¶ 27.) Moilanen states that Henry will "provide independent, third-party testimony regarding the inspection and negotiations regarding Imperial's initial rental of the eight cranes," testimony that Moilanen believes is "critical for [Cloverdale's] defense." (*Id.* at ¶¶ 27, 29.) Cloverdale argues Henry would not be subject to compulsory process in this court but would be subject to such process in the Eastern District of Michigan.

**\*7** Imperial argues that Henry's testimony is not relevant because it relates to the lease of the eight cranes, which is not at issue in this suit. (Dkt. 11 at 12.) Imperial's vice president, Tierney, states that the testimony of its third party witness, Tony Blanzeniak (a resident of Illinois), is critical to Imperial's claim for damages and that Blanzeniak is not subject to subpoena power in Michigan. (Dkt. 11 at Tierney Aff. at ¶ 3 3.) According to Tierney, Blanzeniak will testify to the condition of the two cranes Imperial purchased. (*Id.*) Cloverdale rebuts that Blanzeniak's testimony is inconsequential because "[t]he current condition of the cranes is immaterial." (Dkt. 12 at 2.) Tierney also identifies another non-party witness, James Langley, who is a resident of Texas. (Dkt. 11 at Tierney Aff. at ¶ 33.) Tierney asserts that Langley will testify to the condition of the two cranes and their inspection that was performed in Texas after Imperial purchased them. (*Id.*)

This factor does not weigh heavily in favor of either forum. Both parties argue they will rely on a third party witness who cannot be subpoenaed in the other's preferred district, and both parties argue that the other's third party witness is irrelevant to this litigation. A third non-party witness does not reside in either party's favored forum. Because the court finds that the "balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation,* 626 F.3d at 978.

### B. Interests of Justice

In considering the interests of justice, the court looks to factors such as docketing congestion and speed to trial in the transferor and potential transferee districts; each court's relevant familiarity with the applicable law; the desirability of resolving the controversy in each forum; and the relationship of the respective communities to the controversy. *See id.* "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.*

As Cloverdale acknowledges, there is no substantial difference in the median time to trial or resolution of cases in this district versus the Eastern District of Michigan. [8] This factor is thus not determinative. Nor is the law to be applied. Imperial argues, and Cloverdale does not refute, that the law to be applied is the Uniform Commercial Code, law that does not differ much from state to state and that any federal court can apply with ease. "Furthermore, the court finds no reason why [Michigan] would have a greater interest in contract and [warranty] claims against a [Michigan] company than Illinois would have in resolving claims brought by an Illinois resident corporation." *Nat'l Tech.,* 2013 WL 3755052, at *8

Moreover, the court finds the cases on which Cloverdale relies to be distinguishable. In *United States ex rel. Heathcote Holdings Corp. v. L'Oreal USA, Inc.,* No. 11 C 1921, 2011 WL 3511064, *4 (N.D.Ill. Aug. 9, 2011),* the interests of justice favored transfer to the Southern District of New York because the material events in that case took place in the New York metropolitan area, and the litigation hinged on decisions made by the defendant in New York. *Heathcote* did not involve a contract negotiated in two different venues, as is the case here. There were also other similar suits pending against the defendant in the Southern District of New York in *Heathcote.*

Cloverdale also relies on *Sanders v. Franklin,* 25 F.Supp.2d 855, 859 (N.D.Ill.1998),* in which the court held that the interests of justice favored resolution of the dispute in Michigan as opposed to this district because "Michigan's law

Case: 3:24-cv-50504 Document #: 144-1 Filed: 10/01/25 Page 10 of 23 PageID #:1505

Imperial Crane Services, Inc. v. Cloverdale Equipment Company, Not Reported in Fed....

governs the alleged contract[,] ... this is an action between current and former Michigan residents[, and] ... Michigan has a greater interest in adjudicating over matters involving business transactions occurring within its jurisdiction." As already addressed, this suit is between an Illinois resident and a Michigan resident, and substantial events giving rise to it occurred in this district.

**\*8** Finally, as discussed above, the court is not persuaded that the interests of justice favor the Eastern District of Michigan by virtue of the mirror-image declaratory judgment action Cloverdale filed there. The court thus finds that the interests of justice do not weigh in favor of transferring the case to the Eastern District of Michigan. In light of all the aforementioned factors, the court holds that this case would be best served by remaining in this district.

### CONCLUSION AND ORDER

For the foregoing reasons, Cloverdale's motion to dismiss pursuant to Rule 12(b)(3), or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404 (dkt.5) is denied. Imperial shall move to stay the Michigan action. Defendant is directed to answer the complaint. This case is set for a scheduling conference on November 21, 2013 at 8:30 a.m. The parties shall report on the status of the Michigan case and present a proposed scheduling order.

### All Citations

Not Reported in Fed. Supp., 2013 WL 5904527

---

### Footnotes

1    This court has jurisdiction pursuant to 28 U.S.C. § 1332. Imperial is an Illinois corporation with its principal place of business in Bridgeview, Illinois. (Compl. at ¶ 1.) Cloverdale is a Michigan corporation with its principal place of business in Oak Park, Michigan. (*Id.* at ¶ 2.) More than $75,000 is in controversy. (*Id.* at ¶ 4.)

2    The following facts are taken from the complaint and presumed true unless contradicted by affidavit. *See Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.,* 262 F.Supp.2d 898, 913 (N.D.Ill.2003). In ruling on a Rule 12(b)(3) motion, the court is not obligated to limit its consideration to the pleadings. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.,* 417 F.3d 727, 733 (7th Cir.2005).

3    In support of its motion to dismiss or transfer venue, Cloverdale provides the affidavit of its president, Todd Moilanen. Moilanen asserts therein that the purchase of the two cranes stemmed from a failed leasing transaction. Specifically, he states that Imperial initially contacted Cloverdale in February (not March) 2013 in connection with the Colombia project, and that the parties discussed Cloverdale's leasing eight cranes to Imperial. (Dkt. 6 at Moilanen Aff. ¶¶ 6–9.) Later, two Imperial representatives traveled to Michigan to inspect the eight cranes. (*Id.* at ¶ 9.) The parties reached their lease agreement in Michigan and Imperial sent trucks to Cloverdale's yard in Michigan to transport the cranes to Texas. (*Id.* at ¶¶ 12–13.) Once the cranes were in Texas, however, all but two cranes were returned to Cloverdale. (*Id.* at ¶ 16.) It was then—with the two cranes still in Texas—that the parties negotiated the terms for the actual sale of those two cranes that are the subject of this suit. (*Id.* at ¶¶ 17–18.)

Imperial does not contest this version of the facts, and the court accepts these facts as true. *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.,* No. 07 C 1394, 2008 WL 5423553, at \*2 (N.D.Ill.Dec. 29, 2008) (in ruling on 12(b)(3) motion, "we must take all the allegations in the plaintiff's complaint as true unless they are contradicted by affidavit") (citing *Interlease,* 262 F.Supp.2d at 913). Imperial contends, however, that the failed lease of the eight cranes and its ultimate purchase of the two cranes were separate transactions, and the transaction at issue here is the purchase. (Dkt. 11 at 1–2.) As discussed in text, the court finds that the

Case: 3:24-cv-50504 Document #: 144-1 Filed: 10/01/25 Page 11 of 23 PageID #:1506

Imperial Crane Services, Inc. v. Cloverdale Equipment Company, Not Reported in Fed....

agreement that gave rise to this dispute and the agreement whose terms will be at issue in this litigation is the agreement for Imperial's purchase of the two cranes, not the eight-crane lease agreement.

4    Moilanen does not state the location of Cloverdale's bank in his affidavit, but Cloverdale's brief in support of its motion to dismiss asserts that its bank is located in Michigan, not Ohio. (Dkt. 6 at 6.) Imperial's allegation that Cloverdale's bank is located in Ohio is supported by its affidavit and this dispute must be resolved in favor of Imperial. *See Nat'l Tech., Inc. v. Repcentric Solutions,* No. 13 C 1819, 2013 WL 3755052, at *5 (N.D.Ill. July 16, 2013) (in ruling on a 12(b)(3) motion, "[f]actual conflicts are resolved in favor of the plaintiff, and the court may draw reasonable inferences from those facts") (citing *Moore v. AT & T Latin Am. Corp.,* 177 F.Supp.2d 785, 788 (N.D.Ill.2001)).

5    According to Moilanen, once Imperial threatened to bring suit against Cloverdale in the Circuit Court of Cook County, Moilanen instructed his attorneys to file a declaratory action in Michigan. (Dkt. 6 Moilanen Aff. at ¶¶ 31–32.) Cloverdale initially filed suit in the State Court of Michigan, Oakland County, on June 25, 2013, and Imperial removed the suit to federal court based on diversity of citizenship. (Dkt. 11 Ex. 3 at 3–4.) That suit is still pending in the Eastern District of Michigan. (Dkt. 6 at 3.)

6    Moilanen's affidavit indicates that the two cranes Imperial purchased were among the eight it inspected in connection with the lease. (Dkt. 6 Moilanen Aff. at ¶¶ 9, 11–17.)

7    Imperial argues that venue is also proper pursuant to § 1391(b)(1) because, as an entity subject to personal jurisdiction in this district, Cloverdale is a "resident" of this district for purposes of venue. As noted above, venue is proper in any district in which a defendant corporation is subject to the court's personal jurisdiction. 28 U.S.C. § 1391(c)(2). Cloverdale has not contested this court's personal jurisdiction. By filing the present motion without previously or contemporaneously filing a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Cloverdale has waived that defense. *See Fed.R.Civ.P. 12(h); see also XPO Logistics, Inc. v. Gallatin,* No. 13 C 1163, 2013 WL 3835358, at *5 (N.D.Ill. July 24, 2013). Venue is thus also proper under § 1391(b)(1) because Cloverdale is a resident of this district.

8    Median time to trial in this district is 28.9 months versus 25.8 months in the proposed transferee district. Median time to resolution is 6.7 months in this district versus 8.3 months in the Eastern District of Michigan. (Dkt. 6 Ex. E at 3.)

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4874114
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

MORAN INDUSTRIES, INC., Plaintiff,
v.
James C. HIGDON, Christian Higdon, Karen
Higdon, Urick Thameling, Higdon & Higdon,
Inc., Thameling & Higdon LLC, and Masters
Transmission & Auto Repair, Defendants.

No. 07 C 6092.
|
June 26, 2008.

**Attorneys and Law Firms**

Fredric Adam Cohen, Andrew Peter Bleiman, Danielle M.
Kays, Cheng Cohen LLC, Chicago, IL, for Plaintiff.

Howard B. Randell, James John Sanders, Leahy, Eisenberg
& Fraenkel, Ltd., Chicago, IL, Jason Todd Hardin, Larry L.
Saunders & Associates, PSC, Louisville, KY, for Defendants.

## *MEMORANDUM OF OPINION AND ORDER*

RONALD A. GUZMAN, District Judge.

**\*1** Moran Industries, Inc. has sued defendants James C.
Higdon, Karen Higdon, Christian Higdon, Urick Thameling,
Higdon & Higdon, Inc., Thameling & Higdon, LLC and
Masters Transmission & Auto Repair for their alleged
breaches of various contracts, tortious interference with
contract and trademark infringement. The case is before the
Court on defendants' motions pursuant to Federal Rule of
Civil Procedure ("Rule") 12(b)(2) and (3) to dismiss the
complaint for lack of personal jurisdiction and improper
venue. For the reasons set forth below, the Court grants the
motions.

## *Facts*

Plaintiff is an Illinois corporation and the franchisor of the
"Mr. Transmission Service Centers" and the "Milex Tune Up
& Brake Service Centers." (Compl. ¶ 3.) Plaintiff owns and

has registered with the U.S. Patent and Trademark Office the
"Mr. Transmission" and "Milex" trademarks, service marks
and trade names. (*Id.* ¶ 18.)

Defendants James C., also known as Clayton, Higdon and
Karen Higdon are a married couple who live in Indiana. (*Id.*
¶¶ 4, 6.) Defendant Christian Higdon, who is also an Indiana
resident, is their son. (*Id.* ¶¶ 5–6.)

Karen is an officer of defendant Masters Transmission &
Auto Repair ("Masters Transmission"), which is a Kentucky
corporation with its principal place of business in Kentucky.
(*Id.* ¶¶ 6, 10.)

Defendant Urick Thameling lives in Kentucky, and he and
James are the members of defendant Thameling & Higdon,
LLC ("T & H"), an Indiana limited liability company with its
principal place of business in Kentucky. (*Id.* ¶¶ 7, 9.)

Defendant Higdon & Higdon, Inc. ("H & H") is an Indiana
corporation with its principal place of business in Indiana. (*Id.*
¶ 8.)

### *The Hixson Franchise*

On March 4, 2002, plaintiff entered into a franchise agreement
with H & H for the operation of a Mr. Transmission franchise
in Hixson, Tennessee. (*Id.* ¶ 22.) James and Christian
personally guaranteed H & H's performance under that
agreement. (*Id.* ¶ 23.) Subsequently, Moran and H & H
entered into a co-brand franchising addendum, which gave H
& H the right to operate a Milex Tune Up & Brakes franchise
at the same location, (*Id.* ¶ 24.) Among other things, those
agreements required H & H to pay Moran a weekly royalty
of five percent of the Hixson sales and barred H & H, James
and Christian from being involved in a competing business
within twenty-five miles of Hixson for two years after the
agreements ended. (*Id.* ¶¶ 25–26.)

On June 16, 2006, because of past due royalties, H & H
executed a promissory note in favor of Moran in the amount
$17,982.07 plus interest. (*Id.* ¶ 30.) James and Christian
personally guaranteed the note. (*Id.*)

By March 2007, H & H was in default under the Hixson
franchise agreement and note. (*Id.* ¶ 57.) On June 26, 2007, H
& H stopped operating the franchise. (*Id.* ¶ 58.) Subsequently,
Moran sent H & H, James and Christian a notice of default.
(*Id.* ¶ 59.) Because defendants failed to cure the defaults,
on July 30, 2007, Moran sent them a notice terminating the

franchise agreement. (*Id.* ¶¶ 60–61.) As of September 2007, H & H owed Moran more than $22,000.00 under the Hixson franchise agreement and note. (*Id.* ¶¶ 62–63.)

### The Middletown Franchise

**\*2** On August 2, 2005, Nerak, Inc., a Kentucky corporation allegedly operated by James and Karen, entered into a franchise agreement with Moran to operate a Mr. Transmission franchise in Middletown, Kentucky. (*Id.* ¶ 32.) James operated the Middletown franchise for Nerak from September 2005 through May 2006. (*Id.* ¶ 33.)

On May 26, 2006, James and Urick established T & H. (*Id.* ¶ 34 .)

On June 1, 2006, Moran entered into two agreements with T & H. (*Id.* ¶¶ 37, 40.) The first, which allowed T & H to operate the Mr. Transmission franchise in Middletown, superseded the franchise agreement between Moran and Nerak and was personally guaranteed by James. (*Id.* ¶¶ 37–39.) The second allowed T & H to operate a Milex Tune Up & Brakes franchise at the same location. (*Id.* ¶ 40.) Two weeks later, the parties amended the agreements to add Urick as an additional franchisee. (*Id.* ¶ 41.)

Among other things, the Middletown agreements required T & H and Urick to pay Moran a weekly royalty of five percent of the Middletown sales and barred T & H, James and Urick from being involved in a competing business within twenty-five miles of Middletown for two years after the agreements ended. (*Id.* ¶¶ 42–43.)

On June 14, 2006, because of past due royalties, Nerak and James executed a promissory note in favor of Moran in the amount $43,718.94 plus interest, (*Id.* ¶ 47.)

On August 27, 2007, James and Karen incorporated Masters Transmission and, less than a month later, James, Karen and Urick began to operate Masters Transmission at the Middletown location previously occupied by the Mr, Transmission/Milex franchise. (*Id.* ¶¶ 68–69.) James operates Masters Transmission using the telephone numbers assigned to the Middletown Mr, Transmission/Milex franchise and Moran's proprietary marks and materials. (*Id.* ¶¶ 71–73.)

As of October 3, 2007, T & H, James and Urick owed Moran more than $54,000.00 on the Middletown note. (*Id.* ¶ 74.)

### The Cleveland Franchise

On June 20, 2006, H & H entered into two agreements with Moran. (*Id.* ¶¶ 49, 51.) The first was to operate a Mr. Transmission franchise in Cleveland, Tennessee and was personally guaranteed by James and Christian. (*Id.* ¶¶ 49–50.) The second was to operate a Milex Tune Up & Brakes franchise at the same location. (*Id.* ¶ 51.) These agreements required H & H to pay Moran a weekly royalty of seven percent of the Cleveland sales and barred H & H, James and Christian from being involved in a competing business within twenty-five miles of Cleveland for two years after the agreements ended. (*Id.* ¶¶ 52–53.)

By March 2007, H & H, James and Christian were in default under the Cleveland franchise agreement. (*Id.* ¶ 64.) H & H abandoned the franchise on June 1, 2007 and, as of September 27, 2007, owed Moran nearly $14,000.00 under the Cleveland agreement. (*Id.* ¶¶ 66–67.)

**\*3** Moran filed this suit to recover for defendants' alleged breaches of the parties' various agreements, tortious interference and trademark infringement. Defendants contend that the Court lacks personal jurisdiction over them or is the wrong venue for this suit.

### Discussion

To defeat a Rule 12(b)(2) motion to dismiss, plaintiff must make a *prima facie* case of personal jurisdiction. *Neiman v. Rudolf Wolff & Co., Ltd.,* 619 F.2d 1189, 1190 (7th Cir.1980). In determining whether plaintiff has done so, the Court accepts as true "all well-pleaded jurisdictional allegations in the complaint ... unless [they are] controverted by affidavit." *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.,* 304 F.Supp.2d 1018, 1021 (N.D.Ill.2004). To defeat a Rule 12(b)(3) motion to dismiss, plaintiff must "establish that venue is proper." *Faur v. Sirius Int'l Ins. Corp.,* 391 F.Supp.2d 650, 657 (N.D.Ill.2005). As with an attack on personal jurisdiction, when venue is challenged, the Court "may examine facts outside the complaint ... to determine whether venue is proper." *Id.*

### Motion of James, Christian, Urick, H & H and T & H

Federal courts sitting in diversity may exercise personal jurisdiction over nonresident defendants only if the forum-state court would have such jurisdiction. *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir.2002). Illinois courts

can "exercise jurisdiction on any ... basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 Ill. Comp. Stat. 5/2–209(c). Because the state and federal standards are not substantively different, see Hyatt, 302 F.3d at 715, the Court will address only the federal.

Before doing so, however, the Court must address plaintiff's contention that James, Christian, Urick, H & H and T & H waived their objections to personal jurisdiction by virtue of the forum-selection clauses in the agreements they signed. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (noting that objections to personal jurisdiction are waivable and that "litigant[s] may give express or implied consent to the personal jurisdiction of the court" through forum-selection clauses) (quotation omitted); Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1292 n. 4 (7th Cir.1989) ("Obviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction.") To determine whether defendants have waived their objections, we must first decide whether the clauses are, indeed, forum-selection clauses. [1]

That determination hinges on the language of the clauses. If they contain mandatory language, then the parties have selected a particular forum. Paper Express, Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 757 (7th Cir.1992). If they contain permissive language, then the parties have identified a potential forum, not designated an exclusive one. Id.

**\*4** In relevant part, the franchise agreements, signed by H & H, T & H and Urick, state:

> The parties have finalized the Agreement in the City of Midlothian, County of Cook, State of Illinois, and agree that this contract and their actions hereunder shall be governed by and construed in accordance with the laws of the State of Illinois. The FRANCHISEE agrees and consents to the jurisdiction and venue of the United States District Court for the Northern District of Illinois and/or any court of record of Cook County, Illinois, with respect to any proceedings which arise out of or are connected in

any way with the operation of the MR. TRANSMISSION SERVICE CENTER licensed hereunder.

(Compl., Ex. A, Hixson Franchise Agreement ¶ 34; id., Ex. D, Middletown Franchise Agreement ¶ 34; id., Ex. F, Addition of Urick J. Thameling as Franchisee ¶ 2; id., Ex. H, Cleveland Franchise Agreement ¶ 34.) Although the choice of law language—"[T]his contract ... shall be governed by ... the laws of the State of Illinois"—is mandatory, the forum selection language—"The FRANCHISEE ... consents to the jurisdiction and venue of the United States District Court for the Northern District of Illinois"—is not. Because the parties' agreements permit but do not mandate the use of an Illinois court, defendants did not waive their objections to personal jurisdiction by signing them.

That leaves the question of whether it is appropriate for the Court to exercise personal jurisdiction over these defendants. The Court can do so if the defendant has sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quotation omitted). If a "defendant has continuous and systematic general business contacts with the forum," he is subject to that forum's general jurisdiction and can be sued there for any cause of action. Purdue Research Found. v. Sanofi–Synthelabo, S.A., 338 F.3d 773, 787 (7th Cir.2003) (quotation omitted). If defendant's purposeful contacts with the forum are more limited, he is subject to its specific jurisdiction and can be sued there only if the suit arises out of those specific contacts. RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1277 (7th Cir.1997).

The record establishes that James, Christian, Urick, H & H and T & H's contacts with this forum and their business relationships with the forum-resident plaintiff are sufficient to allow the Court to personal jurisdiction over them. H & H entered into two twenty-year agreements with Moran, an Illinois corporation, to operate "Mr. Transmission/Milex" franchises in Hixson and Cleveland, Tennessee, respectively. (Compl., Ex. A, Hixson Franchise Agreement at 1 & ¶ 3; id., Ex. B, Co–Branding Franchise Agreement ¶¶ G, 2C; id., Ex. H, Cleveland Franchise Agreement at 1 & ¶ 3; id., Ex. I, Co–Branding Franchise Agreement ¶¶ G, 2C.) James and Christian personally guaranteed H & H's performance of those agreements. (Id., Ex. A, Hixson Franchise Agreement, Guarantee; id., Ex. H, Cleveland

Franchise Agreement, Guarantee.) Similarly, T & H and Urick entered into a twenty-year agreement with Moran to operate a "Mr. Transmission/Milex" franchise in Middletown, the performance of which James personally guaranteed. (*Id.,* Ex. D, Middletown Franchise Agreement at 1, ¶ 3 & Guarantee; *id.,* Ex. E, Co–Branding Franchise Agreement ¶¶ G, 2C; *id.,* Ex. F, Addition of Urick Thameling as Franchisee.) Those agreements required defendants, among other things, to: (1) send royalty payments to Illinois every week; (2) send a variety of weekly and monthly reports and any notices required under the contracts to Illinois; (3) send the H & H and T & H "owner-investor[s"] to franchise management training school in Illinois; (4) accept from Moran whatever supervisory assistance it deemed appropriate and adhere to its appearance, quality and service standards; (5) purchase all equipment and supplies from a vendor designated by Moran; (6) use only repair order and sales invoice forms provided by Moran; (7) purchase a computer system from Moran and pay it monthly for the use of its software; (8) maintain insurance that named Moran as an insured; and (9) permit Moran to audit their books and investigate their operations at anytime, (*Id.,* Ex. A, Hixson Franchise Agreement ¶¶ 6(g), (i), 7–8, 11–13, 18, 33, 38; *id.,* Ex. D, Middletown Franchise Agreement ¶¶ 6(g), (i), 7–8, 11–13, 18, 33, 38; *id.,* Ex. H, Cleveland Franchise Agreement ¶¶ 6(g), (i), 7–8, 11–13, 18, 33, 38.) Moreover, the agreements say they were "finalized ... in the City of Midlothian, County of Cook, State of Illinois," contain Illinois choice-of-law provisions and the consents of H & H, T & H and Urick to the jurisdiction and venue of Illinois courts. (*Id.,* Ex. A, Hixson Franchise Agreement ¶ 34; *id.,* Ex. D, Middletown Franchise Agreement; *id.,* Ex. F, Addition of Urick Thameling as Franchisee; *id.,* Ex. H, Cleveland Franchise Agreement ¶ 34.)

**\*5** Further, James testified that he initiated the twenty-year term relationships with Moran, and during its existence he: regularly sent reports to Illinois, called the Illinois office for technical support and sent royalty payments there weekly. (Pl.'s Resp. Opp'n Mot. Dismiss James, Christian, Urick, H & H & T & H, Ex. A, James Dep. at 62–63, 68–71, 79–82, 91–94, 102–06.) Urick testified that he attended manager training school in Illinois, received materials from Moran and sometimes called Moran employees in Illinois for technical support. (*Id.,* Ex. B, Urick Dep. at 34–35, 46–49.) Similarly, Christian testified that he sent mail to and received it from Moran, received some customer support from Illinois, sent royalty payments and reports to Illinois weekly, and attended manager training school there. (*Id.,* Ex. C, Christian Dep. at 40–47, 54–63, 74–75.)

In short, both the documents they signed and their testimony about their relationships with Moran demonstrate that James, Christian, Urick, H & H & T & H had continuous, substantive contact with Moran in this state. Those contacts are sufficient justify this Court's exercise of jurisdiction over them. Their motion to dismiss for lack of personal jurisdiction is, therefore, denied.

Even if the Court has jurisdiction over them, these defendants argue that it is not the proper venue for the suit. Plaintiff's claims implicate both the Court's federal question and its diversity jurisdiction. In the context of this case, venue for either kind of claim is proper in "a judicial district in which a substantial part of the acts or omissions giving rise to the claim[s] occurred." 28 U.S.C. § 1391(a)(2), (b)(2); *see Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995) (stating that courts should "focus on relevant activities of the defendant, not of the plaintiff" in making venue decisions). When, as in this case, "multiple causes of action are joined, venue must be proper as to each one." *Payne v. Mktg. Showcase, Inc.,* 602 F.Supp. 656, 658 (N.D.Ill.1985).

With respect to plaintiff's contract claims, the Court considers a number of factors "including where the conduct underlying the breach occurred and where performance under the contract was to take place" to determine where a substantial part of the acts giving rise to the claim occurred. *PKWare, Inc. v. Meade,* 79 F.Supp.2d 1007, 1016 (E.D.Wis.2000). The first group of alleged breaches about which plaintiff complains are James, Urick, Christian, H & H and T & H's failure to make payments under the franchise agreements and notes (Counts I–II, IV–V, VII). The franchise agreements all say they were "finalized" in Illinois (*see* Compl., Ex. A, Hixson Franchise Agreement ¶ 34; *id.,* Ex. D, Middletown Franchise Agreement ¶ 34; *id.,* Ex. H, Cleveland Franchise Agreement ¶ 34), but there is no dispute that the initial discussions about the franchises occurred in Tennessee, defendants actually executed the franchise agreements in Tennessee, and the franchises they operated were in Tennessee and Kentucky. (*See id.,* Ex. A, Hixson Franchise Agreement at 1 & ¶ 3; *id.,* Ex. D, Middletown Franchise Agreement at 1 & ¶ 3; *id.,* Ex. H, Cleveland Franchise Agreement at 1 & ¶ 3; Pl.'s Resp. Opp'n Mot. Dismiss James, Christian, Urick, H & H & T & H, Ex. A, James Dep. at 62–63, 67, 79–81, 91–93; *id.,* Ex. B, Urick Dep, at 43–45; *id.,* Ex. C, Christian Dep. at 39–41;) Moreover, the alleged omissions that gave rise to these claims—defendants' failure to remit the required payments—occurred in those states as well. (*See* Compl., Ex.

A, Hixson Franchise Agreement ¶ 11; *id.,* Ex. D, Middletown Franchise Agreement at ¶ 11; *id.,* Ex. H, Cleveland Franchise Agreement ¶ 11.) Thus, though some events related to the contract occurred in Illinois, and plaintiff may have felt the impact of the alleged breaches here, Illinois is not where a substantial part of the events underlying the contract claims occurred. *See Abramoff v. Shake Consulting, L.L.C.,* 288 F.Supp.2d 1, 4–5 (D.D.C.2003) (holding that the District of Columbia was not the proper venue for a contract action based on a breach that occurred in Florida, though the contract was executed in and plaintiff suffered the impact of the breach in the District of Columbia); *Fin. Mgmt. Servs., Inc. v. Coburn Supply Co., Inc.,* No. 02 C 8928, 2003 WL 255232, at *2 (N.D.Ill. Feb.5, 2003) ("[I]f economic harm to a plaintiff were really enough to satisfy Section 1391(a)(2), ... a plaintiff could *always* bring suit at its home base on the premise that it has suffered harm there[,]" thus "eviscerating ... [the other] part[s] [that] Congress has prescribed in the venue statute."). Therefore, the Court holds that it is not the proper venue for Counts I–II, IV–V and VII.

**\*6** The same is true for plaintiff's claims against these defendants for breaching the covenants not to compete in the franchise agreements (Counts III and VI), breaching the provision that required them to assign the Middletown lease to Moran (Count IX) and trademark infringement (Count X). The acts that gave rise to these claims—defendants' operation of Masters Transmission in the facility formerly occupied by Mr. Transmission/Milex and their use of plaintiff's trademarks —all occurred in Kentucky. Because the acts that gave rise to the claims in Counts III–IV, IX and X did not occur here, this Court is not the proper venue for them. *See Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1372 (11th Cir.2003) (holding that Georgia was the proper venue for Alabama company's claim that its Georgia-based salesman had breached his non-compete agreement because "the contract was breached when [the defendant] failed to perform his post-employment obligation to refrain from competing ... in Georgia"); *Woodke,* 70 F.3d at 985 (8th Cir.1995) ("The place where the alleged [trademark infringement] occurred ... provides an obviously correct venue."); *Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 295 (3rd Cir.1994) ("[T]he focus of our venue inquiry in a Lanham Act trademark infringement case is the location where the unauthorized passing off takes place ...."); *Abramoff,* 288 F.Supp.2d at 4 ("[T]he fact that the plaintiff may feel damages [from a breach of contract] in the District of Columbia does not create venue under section 1391(a)(2),"); The Court, therefore, grants the motion of James, Christian, Urick, H & H & T & H to dismiss for improper venue.

*Motion of Karen & Masters Transmission*

Plaintiff charges Karen with violating the Middletown franchise's non-compete clause (Count III) and tortious interference for her alleged inducement of T & H, James and Urick to breach the Middletown non-compete clause (Count VIII). In addition, plaintiff charges both Karen and Masters Transmission with trademark infringement (Count X). Even if the Court has personal jurisdiction over these defendants, an issue we need not decide,[2] their motion to dismiss would still be granted because a substantial part of the acts giving rise to these claims did not occur here.

Karen, an Indiana resident, is alleged to have violated the Middletown non-compete clause, tortiously interfered with the Middletown contract and, together with Masters Transmission, infringed plaintiff's trademarks by: (1) inducing T & H (an Indiana limited liability corporation comprised of a Kentucky resident and an Indiana resident), James (an Indiana resident), and Urick (a Kentucky resident) to operate Masters Transmission (a Kentucky corporation) in Kentucky; (2) participating in the operation of Masters Transmission in Kentucky; and (3) using plaintiffs trademarks in connection with the operation of Masters Transmission in Kentucky. Because none, let alone a substantial part, of the acts giving rise to these claims occurred in Illinois, this Court is not the proper venue for them. The Court, therefore, grants Karen and Masters Transmission's motion to dismiss for improper venue.

*Conclusion*

**\*7** For the reasons set forth above, the Court grants the motions to dismiss of James Higdon, Christian Higdon, Urick Thameling, Higdon & Higdon and Thameling & Higdon [doc. no. 14] and Karen Higdon and Masters Transmission [doc. no. 13]. All of the claims in this suit are dismissed without prejudice to refiling in an appropriate forum. This case is terminated.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4874114

**Moran Industries, Inc. v. Higdon, Not Reported in F.Supp.2d (2008)**

---

### Footnotes

1    Before we can make those determinations, however, we must decide whether these issues are governed by federal or state law. The Seventh Circuit has suggested that federal law governs. *See N.W. Nat'l Ins. Co. v. Donovan,* 916 F.2d 372, 374 (7th Cir.1990) (noting that the issue of validity of a forum selection clause is "[p]robably" one of federal law). Because there is little difference between federal and Illinois law, *compare, e.g., Paper Express, Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753, 757 (7th Cir.1992) (clause is valid if mandatory language is used and enforceable if it is reasonable and was not procured by fraud), *with Calanca v. D & S Mfg. Co.,* 157 Ill.App.3d 85, 109 Ill.Dec. 400, 510 N.E.2d 21, 23 (Ill.App.Ct.1987) (same), the Court will use federal.

2    Because this Court is plainly not the right venue for these claims, the Court addresses only that issue, not defendants' arguments that personal jurisdiction is lacking. *See Leroy v. Great W. United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) ("[W]hen there is a sound prudential justification for doing so, ... a court may reverse the normal order of considering personal jurisdiction and venue.")

---

**End of Document**        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case: 3:24-cv-50504 Document #: 144-1 Filed: 10/01/25 Page 18 of 23 PageID #:1513

Vera Bradley Designs, Inc. v. Denny, Not Reported in Fed. Supp. (2018)

2018 WL 3633986
Only the Westlaw citation is currently available.
United States District Court, N.D.
Indiana, Fort Wayne Division.

VERA BRADLEY DESIGNS, INC., Plaintiffs,

v.

Jennifer DENNY, an individual; Austin Devin
2 Denny Boys LLC; Darleen Nicholas, an
individual; Amanda Whitfield, an individual;
and Ilene Simpson, an individual, Defendants.

CAUSE NO.: 1:18-CV-70-TLS
|
Signed 07/30/2018

**Attorneys and Law Firms**

Mark D. Scudder, Barnes & Thornburg LLP, Fort Wayne, IN, Michael Robert Gray, PHV, Gray Plant Mooty Mooty & Bennett PA, Minneapolis, MN, for Plaintiffs.

April M. Jay, Paul B. Overhauser, Overhauser Law Offices LLC, Greenfield, IN, for Defendants.

### OPINION AND ORDER

THERESA L. SPRINGMANN, CHIEF JUDGE

*1 Plaintiff Vera Bradley Designs, Inc., filed a Complaint [ECF No. 1] on March 26, 2018 against Defendants Jennifer Denny, Austin Devin 2 Denny Boys, LLC, Darleen Nicholas, Amanda Whitfield, [1] and Ilene Simpson. In the Complaint, the Plaintiff alleges trademark infringement in violation of 15 U.S.C. § 1114, copyright infringement in violation of 17 U.S.C. § 501, false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a), unfair and deceptive trade practices in violation of Indiana Code § 24-5-0.5-3, common law unfair competition, and unjust enrichment. Defendants Austin Devin 2 Denny Boys, LLC, Denny, and Whitfield jointly filed a Motion to Dismiss [ECF No. 13] under Federal Rule of Civil Procedure 12(b)(3) for improper venue. The Plaintiff responded [ECF No. 17] on May 29, 2018, and the Defendants replied [ECF No. 21] on June 5, 2018. [2] On June 22, 2018, Defendant Nicholas also filed a Motion to Dismiss [ECF No. 27] under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. The Plaintiff responded

[ECF No. 29] on July 6, 2018, and Defendant Nicholas replied [ECF No. 31] on July 13, 2018. These matters are now fully briefed and ripe for review. [3]

### BACKGROUND

The Plaintiff designs and manufactures high-quality bags, luggage, and accessories that are generally recognizable by their unique and creative patterns. The Plaintiff holds 35 federal trademark registrations, has 17 pending federal trademark applications, and holds more than 900 copyright registrations related to the Vera Bradley name and designs. The Plaintiff alleges that the Defendants operated, and continue to operate, various eBay accounts that advertise, distribute, offer for sale, and sell counterfeit Vera Bradley goods and goods that infringe the Plaintiff's trademarks and copyrighted designs. These eBay accounts include austindevin, darlennichola8, twosisterinlaws, collegetime, and collegfund31, each held in the name of at least one of the Defendants. The Plaintiff asserts that at no time did it authorize the Defendants to sell Vera Bradley goods.

*2 Through its employees, the Plaintiff purchased some of the products sold by the Defendants to determine the authenticity of the goods. After evaluating the products, the Plaintiff's in-house counsel sent a cease and desist letter to Defendant Denny on January 27, 2017. After Defendant Denny failed to comply with its demands, the Plaintiff retained outside counsel, who sent cease and desist letters to all of the Defendants on July 26, 2017. On August 1, 2017, the Defendants responded through counsel and agreed to cease and desist selling unauthorized or counterfeit Vera Bradley products. However, the Plaintiff alleges that the Defendants continued to sell these products in spite of such assurances, prompting the Plaintiff to bring the instant lawsuit.

The Defendants assert that venue is improper because a substantial part of the events giving rise to the Plaintiff's claims did not occur in the Northern District of Indiana. Defendant Nicholas further asserts that the Court does not have personal jurisdiction over her.

### STANDARD OF REVIEW

On consideration of a motion to dismiss for improper venue, a court must resolve all factual disputes and draw all reasonable inferences in the plaintiff's favor, *Faulkenberg v. CB Tax*

*Vera Bradley Designs, Inc. v. Denny, Not Reported in Fed. Supp. (2018)*

*Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011), with the plaintiff then bearing the burden of establishing that venue is proper, *Grantham v. Challenge–Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969). If venue is improper, the court may either dismiss the suit or transfer it to a district in which the plaintiff could have initially filed the suit if "it be in the interest of justice." 28 U.S.C. § 1406(a). [4] Venue can be proper in more than one district. *See Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009). When ruling on a motion to dismiss for improper venue, a district court may examine facts outside the complaint without converting the motion to a motion for summary judgment. *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

## ANALYSIS

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Under § 1391(b)(2), venue may be proper in more than one district as long as a "substantial" part of the key events or omissions occurred in each district. "The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." *TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998). "[F]or events to be considered 'substantial' under the statute, it is sufficient for the plaintiff to establish that the events occurring in the forum district 'were part of the historical predicate for the instant suit.' " *Estate of Moore v. Dixon*, 460 F. Supp. 2d 931, 936 (E.D. Wis. 2006) (quoting *Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 1998) ). The relevant events "must have a 'close nexus' to the alleged claim." *Id.* (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 433 (2d Cir. 2005) ).

### A. Whether Venue is Proper in the Northern District of Indiana

The Plaintiff argues that the Defendants' unauthorized sales of Vera Bradley products and sales of counterfeit Vera Bradley products in the Northern District of Indiana are "substantial" within the meaning of § 1391(b)(2). The Plaintiff's Complaint alleges five specific instances in which its employees purchased the counterfeit or unauthorized merchandise at issue from the Defendants. (*See* Compl. ¶¶ 23–24.) In its

briefing, the Plaintiff also clarifies that these purchases were made by its employees residing in the Northern District of Indiana and that the items were shipped to addresses in the Northern District of Indiana. Specifically:

> **\*3** Vera Bradley, through its employee residing in the Northern District of Indiana, purchased from Defendants through their eBay accounts counterfeit Vera Bradley merchandise which Defendants advertised, offered for sale, sold, packaged, and shipped to Vera Bradley's employee residing in the Northern District of Indiana. In order for these transactions to take place, Defendants maintained interactive websites in the form of their eBay accounts in which they advertised and offered for sale counterfeit Vera Bradley goods accessible by anyone with internet access and an eBay account, including Vera Bradley, its employees and other residents in the Northern District of Indiana. Defendants offered for sale counterfeit Vera Bradley merchandise to residents of the Northern District of Indiana, accepted purchase orders from residents of the Northern District of Indiana, and packaged and shipped counterfeit Vera Bradley goods to residents of the Northern District of Indiana, including Vera Bradley employees based in the Northern District of Indiana....

(Pl. Resp. to Defs.' Mot. to Dismiss at 3–4, ECF No. 17.) Further, the Plaintiff argues, venue is appropriate in this District because "Vera Bradley has been, and continues to be, harmed by Defendants['] actions in this district." (Compl. ¶ 10.)

The Court disagrees with the Plaintiff that "substantial events" occurred in the Northern District of Indiana within the meaning of § 1391(b)(2). First, the Plaintiff's argument that venue is proper in this District because it has suffered harm

Case: 3:24-cv-50504 Document #: 144-1 Filed: 10/01/25 Page 20 of 23 PageID #:1515

Vera Bradley Designs, Inc. v. Denny, Not Reported in Fed. Supp. (2018)

in this District is unavailing. "[V]enue would be rendered meaningless if a plaintiff could always bring suit in its home district simply because it had suffered damages." *J.B. Custom, Inc. v. Rossi*, No. 1:10-cv-326, 2011 WL 124509, at *4 (N.D. Ind. Jan. 13, 2011).

Moreover, the only instances of sales made by the Defendants to residents of the Northern District cited by the Plaintiff are those sales initiated by the Plaintiff's employees to determine the authenticity of the goods. The Plaintiff has identified only five specific sales made in this manner and then generally alleges, at least with regard to Defendant Nicholas, that "[d]iscovery will ultimately reveal the volume of counterfeit Vera Bradley merchandise shipped" and that "it is safe to assume" that these sales were not "isolated incident[s]." (*See* Pl. Resp. to Def. Nicholas' Mot. to Dismiss at 4–5, ECF No. 29.) "[I]f the protection afforded by [§ 1391(b)(2) ] is to be meaningful, the adjective 'substantial' must be taken seriously." *Caudill v. Keller Williams Realty Int'l., Inc.*, No. 11 C 1140, 2011 WL 4007727, at *3 (N.D. Ill. Sept. 7, 2011). "Indeed, district courts have been warned not to overlook the requirements that the activities be substantial[.]" *Burke, Warren, Mackay & Serritella, P.C. v. Tamposi*, No. 10-CV-8267, 2011 WL 5373981, at *6 (N.D. Ill. Nov. 4, 2011) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) ). "The test for determining venue under [§ 1391(b)(2) ] is not the defendant's 'contacts' with a particular district, but rather the location of the events or omissions giving rise to the claim." *Family Express Corp. v. Square Donuts, Inc.*, No. 2:16-CV-103, 2016 WL 3855174, at *4 (N.D. Ind. July 14, 2016) (citations omitted).

"To demonstrate that a 'substantial part' of the events giving rise to a claim of trademark infringement have occurred in a particular district, the plaintiff can demonstrate either substantial sales of the infringing product in the district or intentional targeting of the infringing product into the district." *Detroit Coffee Co., LLC v. Soup for You, LLC*, No. 16-CV-9875, 2018 WL 941747, at *2 (S.D.N.Y. Feb. 16, 2018). "[V]enue by substantial sales requires, at minimum, that the plaintiff allege some non-nominal amount of sales in the district." *Id.* at *3. This the Plaintiff has not done. The Plaintiff has alleged only five sales occurring within this District, and alleges that the offending eBay accounts are "accessible by anyone with internet access," which includes residents of the Northern District of Indiana. *See id.* ("Such a paltry number sales, both in absolute and relative terms, cannot be said to represent 'a substantial part of the events ... giving rise to' a claim of trademark infringement."); *see also*

*Anchor Wall Sys., Inc. v. F&D Concrete Rods., Inc.*, 55 F. Supp. 2d 871, 873 (N.D. Ill. June 30, 1999) ("Sales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states."); *Carier v. Micha, Inc.*, No. 06 Civ. 4699, 2007 WL 1187188, at *3 (S.D.N.Y. Apr. 20, 2007) ("Absent proof of marketing to or advertising in a district, however, the sale of a substantial amount of the alleged trademark-infringing goods must occur to satisfy the 'substantial part' requirements for establishing venue pursuant to § 1391(b)(2).").

**\*4** As for targeting, "the plaintiff must show at least that the defendant took some active step to advertise, market, or otherwise solicit business in this district." *Detroit Coffee Co.*, 2018 WL 941747, at *2. "[T]he internet—just like print advertisements, television commercials, and the direct-mail catalogues of yore—offers a mode of communication that can be used to target a product into a particular market." *Id.* In this case, the Defendants have "apparently done nothing else to market, advertise, or otherwise target sales into" the Northern District of Indiana. *See id.*

Further, the Plaintiff's arguments appear to "conflat[e] the 'minimum contacts' analysis utilized for establishing personal jurisdiction with the more rigorous requirements of the venue provision." *Ecommerce Innovations, LLC v. Marketing Advantages Int'l, Inc.*, No. 2:07-cv-7042, 2008 WL 11419051, at *2 (C.D. Cal. Jan. 11, 2008). "It would be error ... to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (citations omitted). Here, the relatively few number of sales alleged—sales initiated by the Plaintiff no less—do not support venue in this District. *See Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207, 214 (D.D.C. 2014) (finding that venue did not lie "where the only connection to the claims are that, arguably, two people, one of whom was a member of the plaintiff [organization], placed orders through a generally accessible website for shipment of a small amount of allegedly infringing merchandise"). The Plaintiff has neither produced evidence that any of the Defendants specifically targeted the Northern District of Indiana, nor pointed to evidence of *any* sales in this District other than those initiated by the Plaintiff. The Court is not prepared to hold that a Plaintiff may manufacture venue in any district it chooses by orchestrating sales via a generally accessible online store. Therefore, the Court finds that venue is not proper in this District.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works. 3

**B. Whether Dismissal or Transfer is Appropriate**

The Plaintiff argues that, in the event the Court finds that venue is not proper in this District, the Court should transfer this case to the Southern District of Indiana pursuant to 28 U.S.C. § 1406(a). Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The decision to transfer is left to the sound discretion of the Court. *Coté v. Wadel*, 796 F.3d 981, 985 (7th Cir. 1999). Transfer is ordinarily in the interest of justice because dismissal of an action that could be brought elsewhere is "time consuming" and may be "justice-defeating." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962). The transferor court does not need to have personal jurisdiction over all defendants before it can apply 28 U.S.C. § 1406(a). *See id.* at 466. "In deciding whether transfer is appropriate under section 1406(a), courts are to look at whether the transfer is in the interest of justice; that is, whether the transferee forum is convenient to the parties and witnesses as well as what impact transfer has on the efficient administration of the court system." *Thomas v. Exxon Mobil Oil Corp.*, No. 2:06-CV-144, 2007 WL 1035159, at *1 (N.D. Ind. Apr. 2, 2007) (citing *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 530 (7th Cir. 2002) ). "When evaluating the convenience of the parties and witnesses, a court can consider: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties." (*Id.* (citation omitted) ).

**\*5** However, "[t]he court must first determine that an adequate alternative forum is available to hear the case, meaning that all parties are within the jurisdiction of the alternative forum and amenable to process there, and that the parties would not be treated unfairly or deprived of all remedies if the case were litigated in the alternative forum." *AAR Int'l, Inc. v. Nimelia Enter. S.A.*, 250 F.3d 510, 524 (7th Cir. 2001). In response to Defendants Denny, Austin Devin 2 Denny Boys, and Whitfield, the Plaintiff argues that the Southern District of Indiana is an adequate venue because the Defendants reside there. However, there is no such assertion regarding Defendant Nicholas, who the record indicates resides in Florida. Whether the Southern District of Indiana is an adequate forum turns on whether Defendant Nicholas is subject to personal jurisdiction there.

Personal jurisdiction refers to the court's power to bring a person into its adjudicative process and render a valid judgment over that person. *Saler v. Irick*, 800 N.E.2d 960 (Ind. Ct. App. 2003). Federal Rule of Civil Procedure 12(b) (2) allows a defendant to move for dismissal on the basis that a court lacks jurisdiction over it. A complaint need not allege facts establishing personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). However, if a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction. *Id.* A plaintiff may not rest upon allegations in its pleadings but must set forth specific facts showing that the court has jurisdiction. *Int'l Steel Co. v. Charter Builders, Inc.*, 585 F. Supp. 816, 819 (S.D. Ind. 1984). Where the parties have not requested an evidentiary hearing, but have filed written submissions and affidavits, as they have here, the plaintiff is required only to make out a prima facie case of personal jurisdiction. *Id.*; *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983). The Court construes all factual conflicts in favor of the Plaintiff. *Purdue Research Found.*, 338 F.3d at 782; *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

Indiana Trial Rule 4.4, as amended in 2003, extended the reach of state court jurisdiction to "any basis not inconsistent with the Constitutions of this state or the United States." Ind. T. R. 4.4(A); *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 964 (Ind. 2006) (noting that Indiana's two-step process to determine jurisdiction had become one-step with the amendment of Trial Rule 4.4(A) ). For personal jurisdiction to be consistent with due process, a defendant must have established minimum contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985). A court examines whether the defendant's contacts with the state are such that she "should reasonably anticipate being haled into court" there. *Id.* at 474 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ). The defendant must have purposefully availed herself of the privilege of conducting activities in the forum state, invoking the benefits and protections of its laws. *Id.* at 474–75.

There are two types of contacts that may be sufficient to establish jurisdiction: (1) a defendant's contacts with the forum state that are unrelated to the basis of the lawsuit—known as general jurisdiction; and (2) a defendant's contacts that are related to the subject matter of the lawsuit—known

Vera Bradley Designs, Inc. v. Denny, Not Reported in Fed. Supp. (2018)

as specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853–54 (2011); *Burger King*, 471 U.S. at 466–67; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 418 (1984).

### 1. General Jurisdiction

**\*6** General jurisdiction permits a federal district court in Indiana to exercise personal jurisdiction over a defendant regardless of the subject matter of the litigation. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear*, 564 U.S. at 924.

The Plaintiff argues that Defendant Nicholas has sufficiently continuous and systematic contacts with Indiana so as to justify the Court exercising general jurisdiction over her because she co-owns property in the state. The Plaintiff admits that this property is unrelated to the litigation, but argues that such ownership demonstrates her "intent to invoke the benefits and protections of the laws of the state of Indiana." (*See* Pl. Resp. to Def. Nicholas Mot. to Dismiss 4, ECF No. 29.) The Plaintiff argues by way of example that, as a property owner, Defendant Nicholas could certainly anticipate being haled into court if somebody was injured on her property. (*Id.*) The Plaintiff also argues that Defendant Nicholas has agents in Indiana whose actions relate directly to the instant lawsuit and therefore establish general jurisdiction. In support of this assertion, the Plaintiff argues that the eBay account set up in Defendant Nicholas' name was created only ten days after the Plaintiff sent a cease and desist letter to Jennifer Denny,[5] and the merchandise purchased from that eBay account was shipped from an Indiana zip code.

These arguments miss the mark. General jurisdiction over individuals turns on domicile; the Plaintiff does not argue, nor does the Court find evidence of record, that Defendant Nicholas is domiciled in Indiana. Rather, the record indicates that she is domiciled in Florida. Therefore, Defendant Nicholas is not subject to general jurisdiction in Indiana.

### 2. Specific Jurisdiction

The Seventh Circuit has instructed that specific jurisdiction is appropriate where: (1) the defendant has purposefully directed her activities at the forum state or purposefully availed herself of the privilege of conducting business in that state; (2) the alleged injury arises out of the defendant's forum-related activities; and (3) the exercise of specific jurisdiction comports with traditional notions of fair play and

substantial justice. *See Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012); *see also N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014).

The Plaintiff argues that the Court should exercise personal jurisdiction over Defendant Nicholas because the Defendants in this case are related to each other, engaged in the same enterprise, and there is no alternative forum in which all of the Defendants would be subject to personal jurisdiction. The Plaintiff also seems to argue that Defendant Nicholas purposely directed her activities at Indiana for the same reasons asserted in its argument for general jurisdiction. To the extent that the Plaintiff argues that Defendant Nicholas' property interests in the state give rise to specific jurisdiction, such argument is without merit as the Plaintiff admits that the instant litigation does not arise from those interests.

The Court is not persuaded by the Plaintiff's arguments regarding specific jurisdiction. The Plaintiff has offered no authority finding that such propositions comport with due process; otherwise jurisdiction would never be at issue where a court could obtain jurisdiction over a single family-member defendant or over a single participant engaged in an alleged scheme. Personal jurisdiction is just that: personal. The Plaintiff must establish jurisdiction over each individual.[6]

**\*7** There is nothing before the Court that demonstrates that Defendant Nicholas directed her activities to the State of Indiana in a manner that would permit the Court to exercise personal jurisdiction over her. At best, her contacts with Indiana consist of a single allegedly counterfeit item shipped from an Indiana zip code. Due process does not counsel exercising personal jurisdiction over the Defendant based on a single sale from a generally accessible website where there is no evidence of targeted activity. The minimum contacts analysis is not satisfied by "random, fortuitous, or attenuated contacts," *Burger King*, 471 U.S. at 475, and the record does not indicate that Defendant Nicholas' contacts are more than random, fortuitous, or attenuated. Therefore, Defendant Nicholas is not subject to personal jurisdiction in Indiana, and the Southern District of Indiana is not an adequate forum for this case.

### CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendants' Motion to Dismiss for Improper Venue [ECF No. 13], and DISMISSES this case. The Court DENIES

AS MOOT the Defendants' Motion to Strike Amended Declaration [ECF No. 25] and DENIES AS MOOT Defendant Nicholas' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [ECF No. 27].

SO ORDERED on July 30, 2018.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3633986

---

## Footnotes

1    The Defendants note that Amanda Whitfield Denny was improperly sued as Amanda Whitfield. For clarity in the instant Order and Opinion, the Court will refer to this Defendant as "Defendant Whitfield" where necessary.

2    In their Reply, the Defendants argued that one of the Plaintiff's supporting declarations was defective. Without leave of Court, the Plaintiff subsequently filed an Amended Declaration purporting to correct the identified defects, which the Defendants moved to strike [ECF No. 25], arguing that the filing was improper and prejudicial as all briefing on the Motion to Dismiss had been completed. The Plaintiff has not filed any response. The Court need not consider the Defendants' Motion to Strike because the Court would come to the same conclusion as to the Defendants' Motions to Dismiss regardless of whether it considers the Amended Declaration.

3    There has not yet been an appearance entered on behalf of Ilene Simpson, and therefore she has not joined any of these Motions nor filed a Motion of her own for the Court's consideration.

4    In contrast, if venue is proper in the district where the case is initially filed, that court retains discretion to order transfer pursuant to 28 U.S.C. § 1404(a).

5    Defendant Nicholas is Defendant Denny's mother.

6    Nor is the Court persuaded by the Defendant's argument that a lack of alternate forum in which every Defendant is subject to personal jurisdiction creates jurisdiction as to Defendant Nicholas. While the potential lack of an alternate forum may be a proper consideration in some cases when determining whether the exercise of personal jurisdiction over a defendant would comport with traditional notions of fair play and substantial justice based on her minimum contacts with a state, the Court does not find this fact significant here.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.